# Illinois Official Reports

## Appellate Court

***People v. Day*, 2016 IL App (3d) 150852**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ANTHONY W. DAY, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-15-0852 |
| Filed | November 28, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 14-DT-1703; the Hon. Carmen Goodman, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James Glasgow, State's Attorney, of Joliet (Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>No brief filed for appellee. |
| Panel | JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.<br>Presiding Justice O'Brien and Justice Carter concurred in the judgment and opinion. |

¶ 1 The State appeals from the trial court's order quashing the arrest of the defendant, Anthony W. Day. The State argues that the evidence presented at the statutory summary suspension hearing established that the defendant's arrest was supported by probable cause.

¶ 2 FACTS

¶ 3 The State charged the defendant with driving while under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2014)). The Secretary of State subsequently imposed a six-month statutory summary suspension of the defendant's driver's license. The defendant filed a petition to rescind the summary suspension, and a hearing on the defendant's petition was held on February 6, 2015.

¶ 4 At the hearing, the defendant called Daniel Lopez, the arresting officer, as his first witness. Lopez testified that he observed the defendant driving a motor vehicle at approximately 3 a.m. on December 27, 2014. Lopez testified that in the time he observed the defendant driving, the defendant made proper stops and proper signals and drove safely. Nothing about the defendant's driving gave Lopez any indication that the defendant was under the influence of alcohol. Lopez pulled the defendant over because excessive noises were emanating from his exhaust system. Lopez recalled that the night in question was cold, but he could not recall whether it was raining. He could not recall whether the roadway was wet. After refreshing his memory by referencing his citations, Lopez agreed that it was raining when he administered the field sobriety tests.

¶ 5 The defendant gave Lopez his driver's license and proof of insurance. Nothing about the defendant's actions indicated to Lopez that the defendant might be under the influence of alcohol. In speaking to the defendant, Lopez found the defendant's answers to be consistent with the questions being asked of him. The defendant was not mumbling or slurring his words. Lopez did, however, detect a strong odor of alcohol emanating from the defendant's mouth.

¶ 6 Lopez instructed the defendant to exit the vehicle. The defendant did so, and as he walked back to Lopez's squad car, he briefly lost his balance, putting his hand on his own vehicle to regain his balance. Lopez instructed the defendant to recite the alphabet from the letter C to the letter R, but the defendant refused, telling Lopez he could not recite the alphabet backward. Lopez then instructed the defendant to count backward from 69 to 44. The defendant complied and accurately performed the task, though he did pause twice for approximately four seconds. Lopez testified that while the defendant was counting, he noticed that the defendant was slurring the numbers. He also noticed that the defendant's eyes were "glassy [and] watery." The defendant did not sway or stumble during the counting and had no trouble maintaining his balance.

¶ 7 Lopez then asked the defendant if he had consumed any alcohol. The defendant told Lopez that he began drinking at approximately 12:30 a.m. and stopped at approximately 3 a.m., a half hour earlier. The defendant told Lopez he had been drinking beer.

¶ 8 Lopez administered a number of field sobriety tests on the defendant. Lopez testified that the one-leg stand test must be administered on a flat, dry, level surface and agreed that the test is "invalid" if not administered in those conditions. Lopez admitted that the test should

not be administered in the rain. Lopez then testified that it was only drizzling at the time. When asked how he now remembered that it was drizzling at the time and date in question, Lopez replied that the reference to his report had triggered an independent recollection. In any event, Lopez admitted that the one-leg stand test should not be administered during a drizzle. Lopez instructed the defendant to hold one foot off the ground while counting to 30. The defendant dropped his foot once in that span, at the nine-second mark. Lopez testified that the defendant swayed during the test but did not move his arms.

¶ 9     Lopez then asked the defendant to perform the walk-and-turn test on a straight crack in the roadway. He stated that this test should also be administered on a dry surface. Lopez testified that the defendant walked nine steps out and nine steps back, remaining on the crack for each step and never using his arms for balance. Lopez testified, however, that the defendant executed an "improper turn" at the midpoint of the test. Lopez explained that the defendant was supposed to take small steps in turning but the defendant instead "made a large turn." The defendant also failed to count his steps out loud, as Lopez had instructed. The defendant did not stumble or lose his balance.

¶ 10    Lopez testified that he administered the horizontal gaze nystagmus (HGN) test. According to Lopez, that test showed that the defendant had consumed alcohol. That result, combined with the results of the other field sobriety tests, indicated to Lopez that the defendant was impaired. Lopez arrested the defendant and charged him with DUI.

¶ 11    On cross-examination by the State, Lopez testified that two passengers were in the vehicle with the defendant but that the odor of alcohol was emanating from the defendant's breath. The defendant indicated that he was coming from a party. Lopez also testified that the defendant failed to touch his heel to his toe on the walk-and-turn test, contrary to Lopez's instructions. Lopez testified that the defendant failed both tests, with two clues on the one-leg stand test and four clues on the walk-and-turn test.

¶ 12    The defendant testified that he was driving his 1997 Jeep at approximately 3:30 a.m. on December 27, 2014, when he was pulled over by Lopez. He had two passengers in the vehicle. Lopez informed the defendant that he had been pulled over because a light above his license plate was out. After walking away from the vehicle, then returning, Lopez informed the defendant that his muffler was too loud. The defendant testified that his muffler was not loud. After telling the defendant that he smelled the odor of alcohol on his breath, Lopez asked the defendant to exit the vehicle.

¶ 13    The defendant testified that the roadway on the night in question was cold, wet, and slick. The defendant denied using his vehicle for balance when exiting the vehicle. He testified that Lopez instructed him to recite the alphabet backward. The defendant declined, and Lopez instructed him to count backward from 69 to 44. The defendant testified that he completed that test accurately and enunciated the numbers clearly. He testified that he also completed the one-leg stand test without losing his balance or using his arms and completed the walk-and-turn test without stumbling or stepping off the line. Each of those tests was performed in the rain. The defendant testified that he was sick on the day in question.

¶ 14    On cross-examination, the defendant testified that he and his passengers were driving from a gathering at his home when he was pulled over. He had consumed four 12-ounce bottles of beer earlier in the night. He had consumed the last of those beers approximately 30 minutes before Lopez pulled him over. The defendant testified that he was five feet, three inches tall, and weighed between 115 and 120 pounds.

¶ 15    Following the conclusion of the defense's case-in-chief, the State moved for a directed finding. On the issue of whether the stop was supported by reasonable suspicion, the court found that the defense had not made a *prima facie* case and granted the State's motion for directed finding. However, on the issue of probable cause for the arrest, the court denied the motion for directed finding, shifting the burden to the State to prove the arrest was supported by probable cause. In so ruling, the court noted that factors such as the odor of alcohol and the results of the HGN test only tended to show consumption of alcohol, rather than impairment. The court also pointed out that the field sobriety tests had been administered incorrectly.

¶ 16    The State recalled Lopez in its case-in-chief. Lopez testified that he detected the odor of alcohol emanating from the defendant's breath when the defendant was outside of the vehicle. When asked how strong the odor was, Lopez replied that it was strong enough to be detectable. He testified that he provided the defendant with instructions for the one-leg stand, walk-and-turn, and HGN tests verbatim from an instruction book provided by the police training institute. The two clues Lopez noticed on the one-leg stand test were the defendant's swaying during the test and putting his foot down on the count of nine. On the walk-and-turn test, the defendant failed to place his heel to his toe while walking and failed to count his steps out loud. Lopez demonstrated those tests before administering them to the defendant, and the weather conditions did not affect his demonstrations.

¶ 17    On cross-examination, Lopez again admitted that it was improper to administer the one-leg stand and walk-and-turn tests on wet pavement. Lopez testified that he did not feel it was "too wet or too rainy" to administer the tests on the defendant. Defense counsel addressed that point on recross-examination:

> "Q. Okay. So you mean to tell me then that your instructions say you can do the one leg stand test on wet pavement as long as it's not too wet; is that what you're saying?
>
> A. Correct. I did the test.
>
> Q. No, sir. You're—
>
> A. Correct. I answered your question. Yes.
>
> Q. *** [W]hen you were at the academy it said that it's okay to do the walk and turn test when the pavement is wet?
>
> A. I—I did the test.
>
> Q. *** I know you did the test. What I'm saying is are you saying that the instructions that you gave—were given with respect to doing these tests say it's okay to do the test when the pavement is wet?
>
> A. Again my testimony I think I didn't think it was that wet for him not to do the test.
>
> Q. That's not what I'm asking you. I'm not asking you what you think. I'm talking about what you were trained on with respect to the proper way to do the test."

The trial court then sustained the State's objection to defense counsel's continued questions.

¶ 18    Following arguments, the trial court granted the defendant's motion to rescind the statutory summary suspension, finding that Lopez did not have probable cause to arrest the defendant for DUI. The court emphasized that there had been no driving violation, that the

defendant had performed reasonably well in the field sobriety tests, and that Lopez had "tap danced a little bit about the rain issue from the rain to drizzling."

¶ 19    The defendant subsequently filed a motion to quash arrest and suppress evidence in which he argued that the arresting officer had no probable cause to believe he had committed the offense of DUI. The trial court granted the motion on the grounds previously provided in its ruling on the motion to rescind the statutory summary suspension. The State filed a motion to reconsider, which the trial court denied.[1]

¶ 20                                         ANALYSIS

¶ 21    In this interlocutory appeal, the State argues that Lopez had probable cause to arrest the defendant for DUI and that the trial court therefore erred in quashing the arrest and suppressing evidence. The State does not, however, appeal the trial court's granting of the defendant's petition to rescind his statutory summary suspension. The defendant has not filed a brief on appeal.

¶ 22    In reviewing the trial court's granting of the defendant's motion to quash arrest, we defer to all factual findings and credibility determinations unless they are contrary to the manifest weight of the evidence. *People v. Jones*, 215 Ill. 2d 261, 267-68 (2005). The ultimate question of whether the arrest was supported by probable cause, however, is reviewed *de novo*. *Id.* at 268. "Probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime." *People v. Wear*, 229 Ill. 2d 545, 563 (2008). Such a determination must be based upon the totality of the circumstances. *Id.* at 564. Probable cause must rise to a level higher than mere suspicion. *E.g.*, *People v. Boomer*, 325 Ill. App. 3d 206, 209 (2001). It must also rise to a level higher than "reasonable, articulable suspicion," the lesser standard required to justify an investigatory stop, rather than a full arrest. *E.g.*, *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

¶ 23    The State lists a number of factors that, it argues, would reasonably have led Lopez to believe that the defendant was driving while under the influence of alcohol. Specifically, the State relies heavily on the fact that the defendant "failed to perform both field sobriety tests as instructed." The State also points out that the defendant admitted to drinking, "had the strong odor of alcohol on his breath," had bloodshot eyes, and slurred his speech. Upon closer examination, however, the State's purported laundry list of factors breaks down.

¶ 24                                I. Field Sobriety Tests

¶ 25    In *People v. Briseno*, 343 Ill. App. 3d 953 (2003), the defendant argued for the first time on appeal that the results of his field sobriety tests should not have been considered because he was too overweight to adequately complete the tests even without the presence of alcohol in his system. The parties agreed that the National Highway Traffic Safety Administration (NHTSA) "has recognized that people who are more than 50 pounds overweight may have difficulty balancing even when sober, and thus have problems physically completing the

---

[1]The hearing on the motion to reconsider was held months after the trial court's original ruling, and there was some confusion on the part of the parties and the court as to what evidence had been suppressed. To clarify, the trial court quashed the arrest and suppressed all evidence obtained thereafter. Thus, this appeal concerns the question of whether probable cause existed to make the arrest.

walk and turn test and the one-legged stand test." *Id.* at 962. The First District accepted the defendant's argument but found that other evidence presented was nevertheless sufficient to sustain a conviction "[w]ithout taking into consideration the results of the field sobriety tests." *Id.*

¶ 26 In *People v. Hires*, 396 Ill. App. 3d 315 (2009), the defendant argued that the State had failed to present any evidence that his field sobriety tests had been conducted under the standardized conditions mandated by NHTSA. The defendant maintained that the State had presented no evidence that his performance on those tests was in any way probative of impairment. *Id.* at 319. The Fourth District rejected the notion that the State needed to present evidence that the tests were administered properly, finding that "the trier of fact needs no expert assistance to explain the significance of behavior like defendant's when deciding whether a driver's" faculties are impaired. *Id.* at 320.

¶ 27 Other jurisdictions have also addressed the same NHTSA-sanctioned field sobriety tests, and their proper administration. In *State v. Meador*, 674 So. 2d 826 (Fla. Dist. Ct. App. 1996), a Florida appellate court held that where the State cannot show that the field sobriety tests were administered in compliance with the reliable methodology promulgated by NHTSA, "[r]eference to the exercises by using terms such as 'test,' 'pass,' 'fail,' or 'points,' *** creates a potential for enhancing the significance of the observations in relationship to the ultimate determination of impairment, as such terms give these layperson observations an aura of scientific validity." *Id.* at 833; see also *United States v. Horn*, 185 F. Supp. 2d 530, 559 (D. Md. 2002) ("To interject into this essentially descriptive process technical terminology regarding the number of 'standardized clues' that should be looked for or opinions of the officer that the subject 'failed' the 'test,' especially when such testimony cannot be shown to have resulted from reliable methodology, unfairly cloaks it with unearned credibility."). In *City of West Bend v. Wilkens*, 2005 WI App 36, ¶ 19, 278 Wis. 2d 643, 693 N.W.2d 324, a Wisconsin appellate court held that the proper administration of field sobriety tests goes to the *weight* of that evidence, not its admissibility, and that "[s]tandardization may lead to reliability."

¶ 28 Though the cases cited above address issues of trial evidence, they are nevertheless informative in the suppression context, where we consider the facts available to the officer at the time. Here Lopez testified—explicitly and repeatedly—that he did not administer those tests (one-leg stand and walk-and-turn) properly. He admitted that it was improper to administer those tests on wet pavement and improper to administer them while it was raining. He even agreed that the improper administration of those tests rendered them "invalid." Notably, Lopez initially could not remember the weather on the night in question. After checking his report, however, Lopez agreed that it was raining. Still later, Lopez apparently had an independent recollection that it was only drizzling. He admitted that the field sobriety tests should not be administered in even a drizzle. The defendant testified that the roadway was wet and slick.

¶ 29 The improper administration of the field sobriety tests in this case rendered the "results" of those tests inherently less reliable, and the trial court rightly gave Lopez's observations of those tests less evidentiary weight. Unlike in *Hires*, where the State merely failed to present any evidence concerning the proper administration of the field sobriety tests, the evidence here affirmatively showed that those tests were not administered correctly. Where the tests were not administered in accordance with NHTSA guidelines, the *Briseno* court completely

- 6 -

disregarded the results. *Briseno*, 343 Ill. App. 3d at 962. Put in terms of a probable cause determination: a reasonably cautious person would give very little, if any, weight to the test results that the person knew to be invalid. See *Wear*, 229 Ill. 2d at 563.

¶ 30    What little probative value the "invalid" and improper testing might have is further eroded when we look to that actual substance underlying Lopez's descriptions. While Lopez and the State broadly described the defendant as having "failed" the tests, the trial court—and this court, in applying *de novo* review—must look to the actual observations that led to his conclusions. See, *e.g.*, *Meador*, 674 So. 2d at 832. Such an analysis shows that the defendant's "failures" on the field sobriety tests[2] in question were technical in nature and few in amount. Regarding the one-leg stand test, Lopez testified that the defendant dropped his foot once while counting to 30 and "swayed" but did not move his arms. On the walk-and-turn test, Lopez testified that the defendant did not place his heel directly to his toe, did not count his steps out loud, and made a "large turn" instead of a small turn.

¶ 31    As the trial court alluded to, the defendant's performance on the field sobriety tests was largely satisfactory. Indeed, we find that none of the purported "clues" on those tests could indicate to a reasonable person that the defendant was impaired by alcohol. The defendant stood on one foot for 30 seconds in the cold and rain, without using his arms to keep his balance, and only put his foot down once. What Lopez described as a failure, others might describe as an impressive achievement. On the walk-and-turn test, the defendant exhibited no signs of physical impairment, such as the loss of balance or coordination. He remained on the line for each of the required 18 steps, and never used his arms for balance. Each of his apparent shortcomings dealt only with Lopez's directions, and two of those—the placement of his feet and his "large turn"—could have related to the wet and slick conditions in which the defendant was performing the test, the very conditions that Lopez testified rendered the tests invalid.

¶ 32    In summary, Lopez administered the field sobriety tests in an improper fashion by requesting the defendant perform them on a wet surface while it was raining. This improper administration alone significantly impairs the probative weight that can be given to those tests. Even further, despite the weather conditions, the defendant's performance on the tests was reasonable, standing on one foot for 30 seconds without using his arms for balance and walking a straight line for 18 steps without stepping off the line. Those results would not lead a reasonably cautious person to believe that the defendant was impaired by alcohol.

¶ 33                                    II. Other Factors

¶ 34    As further factors supporting a reasonable belief that the defendant was under the influence of alcohol, the State cites his admission to drinking earlier in the night, the odor of alcohol emanating from his mouth, his bloodshot and glassy eyes, and his slurred speech.

¶ 35    Initially, we note that the State asserts that the defendant's speech was slurred, with no reference to the defendant's own testimony. Lopez testified that the defendant's speech was normal while he sat in the vehicle but that Lopez only noticed the slur when the defendant counted down numbers from 69 to 44. The defendant, however, testified that he enunciated the numbers perfectly during that exercise. Determination of whether the defendant's speech

---

[2]The State on appeal agrees with the trial court that the defendant's purported failure on the HGN test only indicates the consumption of alcohol and does not contend that it is probative of impairment.

was slurred thus turns on the question of credibility, and we may infer from the trial court's ultimate ruling that it resolved this question in the defendant's favor. See, *e.g.*, *People v. Byrd*, 408 Ill. App. 3d 71, 76 (2011) (holding that the trial court's "legal conclusion sufficiently informs us of the supporting inferences the trial judge may have drawn to reach [its] decision"); see also *People v. Howery*, 178 Ill. 2d 1, 32 (1997) ("[T]he trial court is presumed to know the law and apply it properly."). We must defer to this factual finding. *Jones*, 215 Ill. 2d at 268.

¶ 36    We next consider the effect of bloodshot and glassy eyes and admitted alcohol consumption upon the reasonably cautious person's conclusions. See *Wear*, 229 Ill. 2d at 563. The consumption of alcohol—here established both by the defendant's own admission as well as the odor of an alcoholic beverage—is relevant to the question of impairment by alcohol. *E.g.*, *People v. McKown*, 236 Ill. 2d 278, 302 (2010). The consumption of alcoholic beverages, however, even considered in conjunction with bloodshot or glassy eyes, may not alone give rise to probable cause. As the Second District has explained,

> "Probable cause to arrest a motorist for DUI has been commonly established by the testimony of the arresting officer, in spite of the defendant's contradictory testimony, that the motorist had about him or her the odor or strong odor of alcohol, had slurred speech or had red and glassy eyes. [Citations.] Generally, *these observations are supplemented by other observations* apparent to the officer or inferred from his observations such as speeding, weaving, erratic driving, driving on the wrong side of the road, being stuck in a ditch [citation] or, as in the case at bar, being in a vehicle which is stuck in the mud." (Emphasis added.) *People v. Wingren*, 167 Ill. App. 3d 313, 320-21 (1988).

Certainly, the number of alcoholic beverages a driver admits to having consumed may rouse suspicions of probable cause. Here, however, though the defendant testified at the hearing as to how much he had consumed, there was no evidence presented that he ever provided those details to Lopez.

¶ 37    In the present case, any suspicions of impairment that may have been raised by the defendant's admitted consumption of alcohol and bloodshot and glassy eyes were not corroborated in any significant way by any other factors. By all accounts, the defendant's driving on the night in question had been nothing short of perfect. He had not been involved in any sort of accident. He was able to communicate clearly and effectively with Lopez. The field sobriety tests, improperly administered on a wet, slick surface while it was raining, gave no indication that the defendant was suffering from any sort of physical impairment. While Lopez testified that the defendant briefly lost his balance in walking from his vehicle, the defendant denied this accusation. See *supra* ¶¶ 6, 13.

¶ 38    The fact that the defendant consumed alcohol and had glassy and bloodshot eyes is certainly probative of impairment. To a lesser extent, so too is the defendant's failure to perfectly follow test instructions. We agree with the trial court, however, that those factors are not enough to lead a reasonably cautious person to believe that the defendant had committed the crime of DUI. That is, any suspicions aroused by bloodshot and glassy eyes, unless confirmed by some other factor—such as poor driving, stumbling, falling, or an inability to communicate clearly—do not rise to the level of probable cause. Accordingly, we affirm the trial court's order quashing the defendant's arrest and suppressing all evidence

obtained past that point.

¶ 39                                         CONCLUSION
¶ 40            The judgment of the circuit court of Will County is affirmed.

¶ 41            Affirmed.