NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190883-U

NO. 4-19-0883

IN THE APPELLATE COURT

FILED
September 8, 2021
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| JOSHUA L. COLEMAN, | ) | No. 18DT638 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Pablo A. Eves, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Knecht and Justice Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in denying defendant's motion to suppress as the
arresting officer had probable cause to arrest defendant for driving under the
influence of alcohol (DUI).

¶ 2    In June 2019, defendant, Joshua L. Coleman, filed a motion to suppress evidence,

contending the arresting officer lacked probable cause to arrest defendant for DUI. The trial

court denied defendant's motion to suppress. In a subsequent stipulated bench trial, the court

found defendant guilty of driving with a blood alcohol concentration (BAC) of 0.08 or more (625

ILCS 5/11-501(a)(1) (West 2016)). Defendant appeals, arguing the trial court erred in denying

his motion to suppress. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Following a traffic accident in October 2018, Bloomington police officer Anna Legner issued defendant two traffic citations for (1) DUI (625 ILCS 5/11-501(a)(2) (West 2016)) and (2) driving with a BAC of 0.08 or more (625 ILCS 5/11-501(a)(1) (West 2016)). A law enforcement sworn report indicated defendant had a BAC of 0.206 and "showed impairment" during field sobriety tests conducted at the police station.

¶ 5        In April 2019, defendant filed a motion to suppress evidence, arguing Officer Legner (1) exceeded the limits of an investigatory stop and (2) lacked probable cause to arrest defendant. In addition, defendant argued his field sobriety and breathalyzer test results, obtained after his arrest, were in violation of his right to be free from unreasonable searches and seizures.

¶ 6        In June 2019, the court held a hearing on defendant's motion to suppress. Defendant testified on October 27, 2018, he "wrecked [his] truck." (We note the parties refer to both October 26 and 27 as the date of the accident. The accident occurred shortly after midnight on October 27, 2018.) A police officer who responded to the scene asked defendant if he had been drinking, and defendant responded "yeah, a little bit." The officer handcuffed defendant and placed him in the back of a squad car. Defendant confirmed the officer did not conduct field sobriety tests or request he provide a breath sample. On cross-examination, defendant confirmed he was in a two-vehicle accident and he had first met the other driver at the bar before the accident. He testified that he was "kind of stunned" after the air bags went off and, when he was speaking to the police officer, he was "still dazed" but did not need medical attention.

¶ 7        Following defendant's testimony, the trial court denied the suppression motion which alleged Officer Legner had exceeded the limits of an investigatory stop. As to whether Legner lacked probable cause to arrest defendant, the court determined defendant presented a *prima facie* case and the burden shifted to the State.

¶ 8    Officer Legner then testified she was trained in accident site investigation and DUI investigation. On the night of October 26, 2018, at approximately 12:30 a.m., she was called to an accident scene. The caller reported "two subjects were speeding and wrecked." Legner testified that when she arrived at the scene of the accident, "I saw a telephone pole cut in half. There were wires on the ground. The accident scene if I remember right spanned like pretty much half the block. And because the two vehicles had hit each other there were vehicle parts all over the roadway." Legner approached defendant's vehicle while her partner approached the other driver. Defendant's truck had heavy front-end damage. Legner testified she "noticed [defendant's] eyes were bloodshot and glassy and his speech and mannerisms were very slow while he was speaking with [her]." She did not smell alcohol until after she placed defendant in her squad car, noting the colder air can make it more difficult to smell. Legner asked defendant if he had been drinking and defendant responded "a little bit." Legner testified defendant informed her he had been drinking at Cadillac Jack's since "about 7:30," approximately five hours before the accident. After direct examination, the State played a portion of Officer Legner's body-worn camera (bodycam) footage.

¶ 9    On cross-examination, Legner confirmed she did not request defendant provide a breath sample prior to his arrest and did not consider conducting field sobriety tests at the scene of the accident because "[t]here were wires down, there was a pole that could drop at any minute, there were vehicle parts everywhere. That would not be safe." Defense counsel played a portion of the bodycam video after defendant was placed in the squad car. After the video played, Legner acknowledged she did, "for a moment," consider conducting field sobriety tests at the accident scene but "decided not to." On redirect examination, Legner explained why she decided against conducting field sobriety tests at the scene: "Well, there was two things. Like I said just because

- 3 -

of the safety of the scene, but also my partner, I do believe he ended up doing fields there. We're not going to do fields right next to each other. That's just not a good idea. It's common sense."

¶ 10 The trial court first determined defendant was under arrest when he was placed in handcuffs in the back of Legner's squad car. The court reviewed the evidence, noting, "I found Officer Legner to be more credible than [defendant]." The court acknowledged defendant's testimony was sufficient to shift the burden, and then found:

"Officer Legner testified and I thought she testified credibly that her observations included what she saw when she came upon the scene including the accident scene spanning a half a block with vehicle parts all over the roadway where two vehicles had collided and vehicle—I'm sorry—and wires and a telephone pole hit. That was about the best description of it, and I think that was consistent with what we saw in the video.

Most importantly I was able to observe thanks to the body cam Officer Legner's initial approach and interaction with [defendant]. [Defendant] was positively IDed without objection. He—he said various things on the video. The officer added that she also observed his eyes to be bloodshot and glassy. And her testimony was that his speech and mannerisms were very slow in speaking with her. And when asked if he had consumed any alcohol he said a little bit.

Those are all I think consistent with what we saw there. Also, it was determined by the video that he had been at Cadillac's. I think he meant Cadillac Jack's. I'm not sure. But there was further testimony that the drinking had—he had been there since 7:30 p.m. I'm not sure that was on this particular video.

- 4 -

I'm not considering the fact that there was a later smell of alcohol as the officer placed [defendant] into the back of the squad car because that observation wasn't made before the determination to arrest if that was arrest which I believe it was.

So the Court considers whether or not bloodshot, glassy eyes; the speech and mannerisms being very slow in speaking with the officer; advising the officer he drank a little bit at Cadillac's since 7:30 p.m. is enough taken into consideration along with the accident.

I'm not sure that would have been enough. But I think the body cam answers the question for me from what I observed which was in addition to the testimony. Also slow response times from the Defendant to Officer Legner's questions as well as multiple statements that he didn't know what happened although he was the driver of a truck in a two-car accident. I really don't know what happened, I don't know what happened more than two times, several times in fact about what happened that night.

And so I think also what I noticed was someone who was I think able to hold his liquor and then able to drive and then able to have a cigarette, was not in a daze when he was talking with the officer but rather trying to figure out what he was going to do next.

And so I think between all of that and the demeanor that I observed I think that you were clearly under the influence of alcohol that night and the officer was a hundred percent correct in arresting and there was more than enough probable cause."

The court denied defendant's motion to suppress.

¶ 11    In December 2019, defendant's stipulated bench trial commenced. The evidentiary stipulation stated:

> "1. On October 27, 2018, Officer Anna Legner of the Bloomington Police Department responded to a motor vehicle accident near the intersection of South Morris Avenue and Oakland Avenue in McLean County, Illinois.
>
> 2. Defendant was the driver of one of the vehicles involved in the accident.
>
> 3. Defendant submitted a breath sample into EC/IR-II revealing a blood alcohol content of 0.206%."

Based on this stipulation, the court found defendant guilty of driving with a BAC of 0.08 or more. The court sentenced defendant to 24 months' court supervision.

¶ 12    This appeal followed.

¶ 13                            II. ANALYSIS

¶ 14    On appeal, defendant argues the trial court erred in denying his motion to suppress where there was insufficient evidence to establish Officer Legner had probable cause to arrest defendant.

¶ 15                            A. Forfeiture

¶ 16    Initially, the State contends defendant's argument is forfeited because he failed to raise it in a posttrial motion. Ordinarily, a defendant must object at trial and raise the issue in a posttrial motion to preserve an issue for review. *People v. Hestand*, 362 Ill. App. 3d 272, 279, 838 N.E.2d 318, 324 (2005). However, under the "constitutional-issue exception," "constitutional issues that were properly raised at trial and may be raised later in a postconviction

petition" are not subject to forfeiture for failing to file a posttrial motion. *People v. Cregan*, 2014 IL 113600, ¶ 16, 10 N.E.3d 1196. Because the matter proceeded to a stipulated bench trial with the understanding defendant was preserving the argument he made in his motion to suppress and because the matter could have been raised in a postconviction petition, we find defendant's claim is subject to review under the constitutional-issue exception. See *Cregan*, 2014 IL 113600, ¶¶ 15-20 (finding the constitutional-issue exception applied to permit review of the trial court's denial of the defendant's motion to suppress asserting a violation of constitutional rights, despite the defendant's failure to raise the issue in a posttrial motion).

¶ 17                                   B. Standard of Review

¶ 18        A bifurcated standard of review is employed when reviewing a trial court's ruling on a motion to suppress. *People v. Holmes*, 2017 IL 120407, ¶ 9, 90 N.E.3d 412. The trial court's factual findings are accorded great deference and will be reversed only if they are against the manifest weight of the evidence. *People v. Almond*, 2015 IL 113817, ¶ 55, 32 N.E.3d 535. This deferential standard of review is grounded in the reality that the trial court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in testimony. *People v. Gherna*, 203 Ill. 2d 165, 175, 784 N.E.2d 799, 805 (2003). We review *de novo* the trial court's ruling on whether the arrest was supported by probable cause. *People v. Jones*, 215 Ill. 2d 261, 268, 830 N.E.2d 541, 548 (2005).

¶ 19        In his reply brief, defendant argues that we should review the video from Legner's body camera *de novo*, citing *People v. Flores*, 315 Ill. App. 3d 387, 391-94, 734 N.E.2d 63, 66-69 (2000). In *Flores*, the facts surrounding the defendant's statement to the police were not in dispute. *Flores*, 315 Ill. App. 3d at 392. The appellate court determined, while a motion to suppress is a mixed question of law and fact, "[w]here the facts are essentially uncontroverted

and the credibility of witnesses is not at issue, *de novo* review is appropriate." *Flores*, 315 Ill. App. 3d at 391-92.

¶ 20        *Flores* is inapplicable here as the credibility of witnesses and the disputed issues of fact were central to the motion to suppress. Where the facts are in dispute, a video is an element in determining whether the trial court's findings of fact were against the manifest weight of the evidence; its existence neither justifies nor requires *de novo* review of the court's factual findings. See *People v. Valle*, 405 Ill. App. 3d 46, 56, 939 N.E.3d 10, 18 (2010) ("[C]ases such as *People v. Oaks*, 169 Ill. 2d 409, 662 N.E.2d 1328 (1996) (which endorses *de novo* review when videos in the appellate record resolve all issues of fact) are inapplicable in a case such as this one, where videos in the record do not resolve all issues of fact."). The trial court in the present case made findings of fact based on both the video and the testimony of parties. Further, based on the separate accounts of the video made by defendant and the State, there appear to be different interpretations of the scene the bodycam footage depicts. Therefore, we see no reason to depart from the bifurcated standard of review and review all of the trial court's findings of fact under a manifest weight of the evidence standard. See *Almond*, 2015 IL 113817, ¶ 55.

¶ 21                                C. Probable Cause

¶ 22        "Probable cause to arrest exists when the totality of the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime." *People v. Meo*, 2018 IL App (2d) 170135, ¶ 25, 102 N.E.3d 751. Defendant was charged with a DUI under sections 11-501(a)(1) and (2) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(1), (2) (West 2016)), which provides that a person shall not drive or be in actual physical control of a vehicle while under the influence of alcohol or with a BAC of 0.08 or more. A person is under the influence of alcohol when he is " 'less able, either

mentally or physically, or both, to exercise clear judgment, and with steady hands and nerves operate an automobile with safety to himself and to the public.' " *People v. Bostelman*, 325 Ill. App. 3d 22, 34, 756 N.E.2d 953, 962 (2001) (quoting *People v. Seefeldt*, 122 Ill. App. 3d 106, 108, 445 N.E.2d 427, 429 (1983)). We note defendant's actual physical control of the vehicle is not in question here.

¶ 23          In *People v. Wingren*, 167 Ill. App. 3d 313, 320, 521 N.E.2d 130, 135 (1988), the court observed that "[p]robable cause to arrest a motorist for DUI has been commonly established by the testimony of the arresting officer, in spite of the defendant's contradictory testimony, that the motorist had about him or her the odor or strong odor of alcohol, had slurred speech or had red and glassy eyes." Generally, such observations "are supplemented by other observations apparent to the officer or inferred from his observations such as speeding, weaving, erratic driving, driving on the wrong side of the road, being stuck in a ditch [citation] or, as in the case at bar, being in a vehicle while stuck in the mud." *Wingren*, 167 Ill. App. 3d at 321.

¶ 24          In arguing that probable cause was absent here, defendant relies, in part, on *People v. Motzko*, 2017 IL App (3d) 160154, ¶ 23, 78 N.E.3d 517, where the appellate court upheld the trial court's conclusion that there was no probable cause to arrest the defendant for DUI. The *Motzko* court cited *People v. Day*, 2016 IL App (3d) 150852, ¶¶ 23, 37-38, 67 N.E.3d 607, for the proposition that, absent further corroboration, the odor of alcohol, bloodshot eyes, and slurred speech do not give rise to probable cause that the defendant has committed DUI. *Motzko*, 2017 IL App (3d) 160154, ¶ 23.

¶ 25          Importantly, the trial court in *Motzko* determined that the police officer was not credible. *Motzko*, 2017 IL App (3d) 160154, ¶ 26. Because the presumption ran in favor of the trial court's factual determinations, the appellate court determined that there was no probable

- 9 -

cause to arrest the defendant for DUI. *Motzko*, 2017 IL App (3d) 160154, ¶ 26. Here, the trial court found Legner to be credible, specifically finding "Officer Legner to be more credible than [defendant]." Thus, our presumption runs in favor of the officer's testimony, which provides evidence to support a finding that a reasonably prudent person would believe defendant was under the influence of alcohol. Thus, *Motzko* is inapposite.

¶ 26        *Day* is also distinguishable from the case at bar. In *Day*, the officer administered field sobriety tests in an improper fashion by asking the defendant to perform them on a wet surface while it was raining, and, regardless, the defendant's performance of the tests was reasonable and not enough to lead a reasonable person to believe he was under the influence of alcohol. *Day*, 2016 IL App (3d) 150852, ¶ 32. Further, the officer testified the defendant only slurred his words when counting down from numbers 69 to 44. *Day*, 2016 IL App (3d) 150852, ¶ 35. The court determined that,

> "[T]he defendant's admitted consumption of alcohol and glassy eyes were not corroborated in any significant way by any other factors. By all accounts, the defendant's driving on the night in question had been nothing short of perfect. He had not been involved in any sort of accident. He was able to communicate clearly and effectively with [the officer]." *Day*, 2016 IL App (3d) 150852, ¶ 37.

The court held that "any suspicions aroused by bloodshot and glassy eyes, unless confirmed by some other factor—such as poor driving, stumbling, falling, or an inability to communicate clearly—do not rise to the level of probable cause." *Day*, 2016 IL App (3d) 150852, ¶ 38.

¶ 27        Unlike the defendant in *Day*, in this case there is corroborating evidence beyond bloodshot and glassy eyes. Defendant had been in a significant accident with debris stretching half the block. Moreover, Officer Legner observed defendant's speech and mannerisms were

slow. These were signs of poor driving and an inability to communicate clearly—factors the court in *Day* mentioned as potentially supportive of a finding of probable cause. See *Day*, 2016 IL App (3d) 150852, ¶ 38.

¶ 28    In totality, Officer Legner received a report of two cars speeding and arrived on the scene of a significant accident. Legner spoke to defendant, who had bloodshot and glassy eyes, slow speech and mannerisms, and admitted to drinking prior to the accident. Under these circumstances, a reasonably cautious person would believe defendant had committed a DUI. Legner's testimony was not perfect. As defendant notes, Legner testified defendant informed her he had been drinking since 7:30 p.m. even though he did not disclose the time he began drinking until after he was in the squad car. However, one misstatement did not render the entirety of Legner's testimony incredible.

¶ 29    In addition, as the trial court determined from its own viewing of the bodycam footage, defendant's responses to Legner's questions were slow, and he repeatedly stated he did not know what had happened. Defendant told Legner, "I don't even know what I slammed into." Although Legner did not ask defendant to perform field sobriety tests at the scene of the accident, performance on field sobriety tests is merely one of several factors which could support a finding of probable cause to arrest. In this instance, Officer Legner clearly used her discretion to determine the scene of the accident was not a safe place to perform such tests, and there was sufficient evidence of impairment that such tests were not immediately necessary. The record shows a reasonably prudent person could find that defendant was under the influence of alcohol on the night of the accident. Therefore, the trial court did not err in determining Legner had probable cause to arrest defendant.

¶ 30                                      III. CONCLUSION

- 11 -

¶ 31        For the reasons stated, we affirm the trial court's judgment.

¶ 32        Affirm.