2024 IL App (1st) 221241-U

FIRST DISTRICT,
FIRST DIVISION
August 19, 2024

No. 1-22-1241

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. TN 46495-496 |
| | ) | |
| KEVIN TRENT, | ) | |
| | ) | Honorable |
| | ) | Diann K. Marsalek, |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith concurred in the judgment.
Justice Pucinski specially concurred.

**ORDER**

¶ 1    *Held*:    Defendant's conviction for driving under the influence of alcohol is affirmed where the evidence was sufficient to prove beyond a reasonable doubt that he was under the influence of alcohol.

¶ 2    Following a bench trial, defendant Kevin Trent was found guilty of obstruction of traffic (Chicago Municipal Code § 9-40-130 (added July 12, 1990)) and driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2018)). Defendant challenges the sufficiency of the evidence to sustain his DUI conviction on appeal, arguing that the State failed to prove beyond a reasonable doubt that he was under the influence of alcohol. We affirm.

¶ 3                                                    BACKGROUND

¶ 4          Around 6:00 a.m. on February 16, 2019, Officer Stewart and her partner, Officer

Jarzabek, responded to a call at 1955 West Van Buren Street.[1] Stewart observed a "vehicle

parked in two lanes facing westbound, right off the ramp of the expressway." As she approached,

she observed the driver, who she identified as defendant, "slumped over the wheel *** asleep."

Defendant's shoulders and head were down, his eyes were closed, and the car was "still in

drive." Stewart knocked on the window several times, but defendant did not respond. She and

other officers then began rocking the car to wake him. Defendant eventually responded and

exited the vehicle. His "speech was slurred," he was "very tired," "unsure on his feet," and "kept

leaning" against the car.

¶ 5          When Officer Jeffrey Kriv arrived at the scene to assist with the investigation, he

observed a vehicle "stopped in the intersection *** straddling one of the lanes." Defendant and

two officers were standing outside of the vehicle. After some initial confusion, defendant handed

Kriv his driver's license and insurance card.

¶ 6          Defendant explained that he was on his way home from "doing Postmates after he got off

of his job at the Chicago Transit Authority." He claimed that he got off on Damen even though it

was 32 blocks west of where he lived because that is what the "GPS told him." Defendant

admitted to drinking "one cup of Wild Irish Rose" that night. A "large bottle of Wild Irish Rose"

was recovered from the front seat of the vehicle with a "little bit left in it." While talking to

defendant, Kriv noticed a strong smell of alcohol on his breath. Defendant was also slightly

slurring his speech, had "reddish eyes" and was "a little unsure on his feet."

---

[1] Stewart and Jarzabek's first names do not appear in the record on appeal.

¶ 7        At the time of the incident, Kriv had been a Chicago police officer for 23 years, was trained in DUI detection and enforcement, and had effectuated approximately 2,000 DUI arrests. At the scene, Kriv administered three standardized field sobriety tests: the Horizontal Gaze Nystagmus (HGN), the walk-and-turn, and the one-leg stand. He explained that the HGN tests for different clues of alcohol consumption in the eyes, including "lack of smooth pursuit" and "nystagmus *** which is the involuntary jerking of the eyes." According to Kriv, defendant exhibited "clues of consumption" in each eye.

¶ 8        Kriv instructed defendant how to take the walk-and-turn test. It "appear[ed] *** that [defendant] understood" the test, since he kept repeating the instructions back to Kriv. Defendant initially had trouble with his balance and keeping his right foot in front of his left heel to toe, but "did well" on the first nine steps forward. However, instead of turning around and taking nine steps back, he "started walking backwards" and "didn't touch heel to toe." "The whole thing was just wrong going backwards." Kriv explained that it was a divided attention test and defendant "could not comprehend both things at one time."

¶ 9        Similarly, defendant "did really well for the first 24 seconds" of the one-leg stand test, although he did not keep his foot parallel to the ground, as instructed. After that, he "couldn't keep his foot up, put it down numerous times, [and] use[d] [his] arms for balance while swaying." Defendant claimed that he kept putting his foot down because he had a "bad knee." When Kriv administered the alphabet test, he told defendant to recite the letters "d" to "s." Instead of stopping at "s," defendant kept going until he finished the alphabet.

¶ 10       In Kriv's opinion, defendant was under the influence of alcohol and was taken into custody. At the police station, Kriv read defendant the "Warning to Motorists" form, informing him that "if he submits to a breath test and blows over a .08, his license [would be] suspended for

six months" and "if he refuses [the test], his license would be suspended for a year." Defendant refused to take the Breathalyzer test.

¶ 11        Kriv's body-worn camera footage was published at trial, showing, in relevant part, Kriv's interactions with defendant, his instructions and demonstrations on the field sobriety tests, and defendant's performance on each of the tests. Kriv commented that arresting defendant was a "tough call," because defendant "did some things well" and seemed like a "decent," "hardworking guy."

¶ 12        Kriv acknowledged that it was "pretty cold" that morning, and that there are "numerous" reasons why a person's speech could be slightly slurred and their eyes red other than from "having consumed alcohol." Nevertheless, Kriv believed that defendant was under the influence of alcohol based, in part, on the location of his car in the middle of two lanes of traffic; his admission to drinking alcohol; the open alcohol found in his car; the "strong" odor of alcohol on his breath; his slurred speech; his red eyes; his "trouble with [Kriv's] instructions" on three of the four field sobriety tests; and the "numerous clues of consumption on the HGN."

¶ 13        The trial court found defendant guilty of obstruction of traffic and DUI, concluding that "alcohol definitely ha[d] played a factor into reducing [defendant's] capability and *** mental faculties." The court explained that a "reasonable person" who was "really that tired *** would have pulled over to the side of the road or found some way to not fall asleep in the car like that," *i.e.*, slumped over the wheel with his car "straddled in the lanes." The court rejected defendant's argument that he was just "really sleepy," given the odor of alcohol on his breath; his reddish eyes; the "open liquor in the car"; his admission to drinking alcohol; his "problems performing the tests, especially, the walk-and-turn and the one-leg stand"; and the fact that a "reasonable" person that only drank "a small amount of liquor" would have taken the Breathalyzer test.

¶ 14        Defendant filed a motion to reconsider, arguing, *inter alia*, that the State failed to prove him guilty of DUI beyond a reasonable doubt. The trial court denied defendant's motion, finding that the State met its burden "based upon the location of the car, [defendant] being passed out, asleep in the car, the admission of drinking, having open alcohol in the car, being so far from [his] house, [and] how he *** perform[ed] on the field sobriety tests." Defendant was sentenced to 12 months' supervision for DUI concurrent to six months' supervision for obstruction of traffic.

¶ 15                                                    ANALYSIS

¶ 16        Defendant argues that the State failed to prove beyond a reasonable doubt that "[his] alcohol consumption actually impaired his ability to think or act with ordinary care."

¶ 17        In reviewing a challenge to a conviction based on the sufficiency of the evidence, it is not our function to retry the defendant; rather, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We " 'will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt.' " *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011) (quoting *People v. Collins*, 214 Ill. 2d 206, 217 (2005)). "[A] reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses." *People v. Brown*, 2013 IL 114196, ¶ 48.

¶ 18        To sustain a conviction for DUI, the State must prove that defendant was "under the influence of alcohol" while in "actual physical control" of a vehicle. 625 ILCS 5/11-501(a)(2)

(West 2018). Defendant's sole contention on appeal is that the evidence was insufficient to prove that he was "under the influence of alcohol."

¶ 19        "Under the influence of alcohol" means "under the influence to a degree that renders the driver incapable of driving safely." *People v. Love*, 2013 IL App (3d) 120113, ¶ 34 (quoting *People v. Weathersby*, 383 Ill. App. 3d 226, 229 (2008)). The State must prove that " 'as a result of drinking any amount of alcohol, [defendant's] mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care.' " *People v. Morris*, 2014 IL App (1st) 130512, ¶ 20 (quoting Illinois Pattern Jury Instructions, Criminal, No. 23.29 (4th ed. 2000)). Intoxication is a question of fact to be resolved by the trier of fact in assessing the credibility of the witnesses and the sufficiency of the evidence. *Id.* (citing *People v. Janik*, 127 Ill. 2d 390, 401 (1989)). Circumstantial evidence alone can sustain a DUI conviction. *Love*, 2013 IL App (3d) 120113, ¶ 35. And "testimony from the arresting officer alone may be sufficient to prove guilt beyond a reasonable doubt." *Id.* Relevant evidence of the influence of alcohol includes defendant's breath smelling of alcohol, glassy or bloodshot eyes, and refusal to submit to chemical testing, which "can be evidence of [defendant's] consciousness of guilt." *Id.*

¶ 20        Viewed in the light most favorable to the State, the circumstantial evidence in this case amply establishes that defendant was under the influence of alcohol. Defendant fell asleep at the wheel of his vehicle while it was "still in drive," "straddling" two lanes in the middle of the street. Officers had to shake the entire car to wake him. Defendant admitted to drinking alcohol; there was a large, near-empty bottle of alcohol recovered from the front seat of his vehicle; his breath smelled of alcohol, his speech was slurred, his eyes were red and he was unsteady on his feet. Defendant also exhibited clues of consumption on the HGN test, was unable to follow Kriv's instructions on the other field sobriety tests, and refused to take the Breathalyzer test.

¶ 21    We find that the evidence sufficiently established that defendant was under the influence of alcohol to a degree rendering him "incapable of driving safely." *Love*, 2013 IL App (3d) 120113, ¶ 34; see also *Morris*, 2014 IL App (1st) 130512, ¶¶ 20-22 (evidence was sufficient to sustain defendant's aggravated DUI conviction given the credible testimony establishing that defendant was found asleep at the wheel, had bloodshot eyes, smelled of alcohol and refused a Breathalyzer test); *People v. Cantlin*, 348 Ill. App. 3d 998, 1004 (2004) (evidence was sufficient to prove defendant guilty of DUI where he had a strong odor of alcohol on his breath, bloodshot and glassy eyes, slurred speech, "failed" the field sobriety tests, refused a Breathalyzer test, admitted to drinking, and had an open bottle of alcohol in his car).

¶ 22    Defendant argues that he was just tired, only drank one cup of Wild Irish Rose, and, in Kriv's own words, it was a "tough call" whether he was under the influence of alcohol. However, it is "not [this] court's role to reweigh the evidence" (*People v. Hendricks*, 325 Ill. App. 3d 1097, 1110 (2001)), and "[t]he fact that there is evidence supporting a defendant's position does not render the evidence supporting a conviction insufficient" (*People v. Tatera*, 2018 IL App (2d) 160207, ¶ 29). Moreover, defendant's claimed exhaustion does not explain the "strong" odor of alcohol on his breath, his admission to drinking, and the open container of alcohol found in his car. Here, the evidence was more than sufficient to show that "as a result of drinking *any amount of alcohol*, [defendant's] mental or physical faculties [were] so impaired as to reduce his ability to think and act with ordinary care." (Emphasis added and internal quotation marks omitted.) *Morris*, 2014 IL App (1st) 130512, ¶ 20; see also *People v. Phillips*, 2015 IL App (1st) 131147, ¶ 20 (noting that "the law does not require the State to prove a high degree of impairment").

¶ 23        Defendant also asks us to reevaluate Kriv's credibility because Kriv was "recently charged with four counts of perjury and five counts of forgery" in an unrelated case. As previously noted, "a court of review will not substitute its judgment for that of the trier of fact on questions involving *** the credibility of the witnesses." *People v. Gray*, 2017 IL 120958, ¶ 35. Without identifying any inconsistencies between Kriv's testimony and body-worn camera footage, defendant nevertheless argues that we "should not defer to the circuit court's credibility determinations where there is no reason to defer to the interpretation of non-live exhibits." See *People v. Radojcic*, 2013 IL 114197, ¶ 34 (the trial court was not in a superior position to evaluate the evidence where the State offered "no live testimony, only transcripts from the grand jury").

¶ 24        In *People v. Shaw*, 2015 IL App (1st) 123157, ¶ 29, the court gave "less deference to [the] trial court's determinations of fact" where "they [were] based on evidence other than live witness testimony." In *Shaw*, the "surveillance video seriously call[ed] into question [the witness'] account of his encounter with [defendant]," and, therefore, the trial court's findings of fact and credibility determinations were against the manifest weight of the evidence. *Id.* ¶¶ 29-30. Since the body-worn camera footage corroborates Kriv's testimony in this case, there is no reason to give "less deference" to the trial court's findings of fact or credibility determinations. Compare *People v. Towner*, 2022 IL App (1st) 192018-U, ¶¶ 25-27 (cited as persuasive authority pursuant to Illinois Supreme Court Rule 23(e)) (rejecting defendant's argument that the court "should not give deference to the trial court's credibility assessments because its findings depended on video evidence" where the video did not "contradict[ ] the officer's testimony such that it render[ed] their testimony incredible") with *People v. Dixon*, 2015 IL App (1st) 133303, ¶¶ 29, 34 (the appellate court was "not required to be deferential to the trial court's findings"

where they "were not based on witness testimony, but on [its] viewing of the surveillance video," and its factual findings were not supported by the video).

¶ 25     Defendant further asserts that the field sobriety tests "did not establish intoxication" because they "were administered in an improper manner which led to unreliable results." Citing the National Highway Traffic Safety Administration's (NHTSA) manual, defendant claims that Kriv did not "assur[e] that [defendant] understood all of the instructions" for each test, "failed to instruct [defendant] to place his feet on a real or imaginary line" for the walk-and-turn test, and "did not testify that he held maximum deviation for a minimum of four seconds" at a 45-degree angle for the HGN test.

¶ 26     Because defendant "does not challenge the admissibility of the [field sobriety tests] on appeal, but rather [their] probative value, his challenge goes to the weight [of the] evidence, which is a factual determination reserved for the trier of fact." *Phillips*, 2015 IL App (1st) 131147, ¶ 24; see also *People v. Hutchinson*, 2013 IL App (1st) 102332, ¶ 37 (this court will not "substitute its judgment for that of the trier of fact" on the weight of the evidence). And, even disregarding the results of the field sobriety tests, a rational trier of fact could still have found defendant guilty of DUI based on Kriv's testimony alone. See *People v. Groebe*, 2019 IL App (1st) 180503, ¶ 60 ("Although the failure of a field sobriety test can be one factor indicating impairment, a finding of impairment can rest on solely the officer's testimony"); *Janik*, 127 Ill. 2d at 402 ("A DUI conviction may be sustained based solely on the testimony of the arresting officer, if credible").

¶ 27     In *People v. Day*, 2016 IL App (3d) 150852, the court held that there was no probable cause to support defendant's arrest for DUI in affirming the trial court's order quashing his arrest. *Id.* ¶ 38. In doing so, the court found that the "probative weight" of the field sobriety tests

was "significantly impair[ed]," where the arresting officer admitted that he had improperly administered them on wet pavement while it was raining, rendering the results "invalid." *Id.* ¶¶ 28, 32. Moreover, "any suspicions of impairment that may have been raised by the defendant's admitted consumption of alcohol and bloodshot and glassy eyes were not corroborated in any significant way," given that his driving was "nothing short of perfect," he "communicate[d] clearly and effectively," and there was "no indication that [he] was suffering from any sort of physical impairment." *Id.* ¶¶ 37-38.

¶ 28    Unlike in *Day*, defendant challenges the sufficiency of the evidence in this case, which we review in the light most favorable to the State. See *Tatera*, 2018 IL App (2d) 160207, ¶ 37 (rejecting defendant's reliance on *Day* based on the "differing standards of review" for a motion to suppress and the sufficiency of the evidence). As discussed herein, the evidence overwhelmingly shows that defendant was impaired to a degree rendering him "incapable of driving safely" (*Love*, 2013 IL App (3d) 120113, ¶ 34), even without the field sobriety tests.

¶ 29    Accordingly, viewing the evidence in the light most favorable to the State, a " 'rational trier of fact could have found the essential elements of [DUI] beyond a reasonable doubt.' " See *Collins*, 106 Ill. 2d at 261 (quoting *Jackson*, 443 U.S. at 319).

¶ 30                                 CONCLUSION

¶ 31    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 32    JUSTICE PUCINSKI, specially concurring:

¶ 33    I concur.

¶ 34    However, I am really troubled by the testimony of the police and the state's argument that the defendant was asleep and the car was in drive. If that's true then the car should have been moving once the defendant was taken out, even if, for example he had his foot on the brake

and kept it there while he was asleep (really?) and then was awakened by the police. Further, when the police shook the car, wouldn't it likely to have moved forward? The car being in drive rather than in neutral or park really makes no sense.

¶ 35 I wonder if this testimony was to show control of the car, which was unnecessary, since all they really had to show for control was that he was in the driver's seat and the keys, unmentioned here, were in the ignition.

¶ 36 I don't doubt that he was under the influence, or that he was asleep, or even that he was in control of the car. I do doubt the credibility of these cops on this specific point, even though the result is the same. I believe this testimony unnecessarily glossed the facts. They did not need to overstate. This sort of detail could easily have de-railed the state case. Both the police witnesses and the state need to make sure their testimony of the facts makes sense. The fact that the defense did not spot this doesn't reduce the possibility that the state overreached on this detail.