2017 IL App (3d) 160154

Opinion filed April 19, 2017

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2017

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, ) | Appeal from the Circuit Court |
| ) | of the 10th Judicial Circuit, |
| Plaintiff-Appellant, ) | Peoria County, Illinois. |
| ) | |
| v. ) | Appeal No. 3-16-0154 |
| ) | Circuit No. 15-DT-403 |
| GARRETT MOTZKO, ) | |
| ) | The Honorable |
| Defendant-Appellee. ) | Lisa Y. Wilson, |
| ) | Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justices Carter and McDade concurred in the judgment and opinion.

**OPINION**

¶ 1       Defendant, Garrett Motzko was charged with driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2014)). Defendant filed a motion to quash arrest and suppress evidence, as well as a petition to rescind his statutory summary suspension. The trial court granted defendant's motion to suppress. The State filed motions to reconsider, which the trial court denied. The State then appealed the trial court's order, granting defendant's motion to suppress. Thereafter, the court granted defendant's petition to rescind. On appeal, the State argues that the trial court (1) erred in granting defendant's motion to suppress, (2) erred in

denying its motions to reconsider, and (3) lacked subject matter jurisdiction to grant defendant's petition to rescind. We affirm.

¶ 2                                          FACTS

¶ 3        On August 11, 2015, defendant was involved in single-vehicle motorcycle accident at the intersection of Main Street and Crescent Avenue in Peoria. Officer Michael Bishoff of the Peoria police department responded to the scene and issued defendant citations for improper lane usage (625 ILCS 5/11-709(a) (West 2014)), failure to reduce speed to avoid an accident (625 ILCS 5/11-601(a) (West 2014)), and DUI (625 ILCS 5/11-501(a)(2) (West 2014)). On October 30, 2015, defendant filed a motion to suppress evidence and quash arrest and a petition to rescind the statutory summary suspension of his driving privileges.

¶ 4        A hearing was held on defendant's motion to suppress evidence and quash arrest. Officer Bishoff was the only witness to testify at the hearing. Bishoff testified that, at approximately 11:45 p.m. on August 11, 2011, he was dispatched to an accident on Main Street and Crescent Avenue in Peoria, near Methodist Hospital. When he arrived, he saw a motorcycle lying on its side and defendant sitting on the ground being treated by medical personnel. Bishoff spoke to a security guard employed by Methodist Hospital, who told him that he observed defendant drive his motorcycle up Main Street at a "high rate of speed," fail to negotiate the curve, and crash. The security guard also told Bishoff that he could smell alcohol on defendant's breath. Bishoff did not question the security guard further.

¶ 5        Bishoff spoke to defendant while he was being treated at the scene. Bishoff asked defendant where he was coming from, and he responded, "downtown." Bishoff then asked defendant if he was coming from his home in Morton, and defendant said he was. Bishoff asked defendant if he had consumed any alcohol. Defendant initially stated that he had a 12-ounce beer

2

and then corrected himself and said he had a 20-ounce beer. Bishoff did not ask defendant any other questions before he was transported to the hospital.

¶ 6        At the hospital, Bishoff performed a Horizontal Gaze Nystagmus (HGN) test on defendant. Bishoff did not perform any other field sobriety tests on defendant because of his injuries from the accident. Before the administration of the HGN test, defendant told Bishoff that he was blind in his right eye. Bishoff did not remember asking defendant if he struck his head during the accident but admitted that defendant may have sustained a head injury. Bishoff did not take that into account when administering the HGN test to defendant.

¶ 7        Bishoff testified that he observed five clues during defendant's HGN test and explained that the presence of four or more clues is a strong indication that the individual being tested is "over .08 or intoxicated." Bishoff testified that he received training in the HGN test and was taught that it can be used to determine if someone is intoxicated. He testified that HGN is "one of the most *** accurate tests in determining somebody to be over a .08 [blood alcohol level]."

¶ 8        In his report, Bishoff listed "glassy bloodshot eyes, slight odor of an alcoholic beverage, single vehicle crash involving motorcycle, [and] admission to drinking" as his reasons for believing defendant was driving under the influence of alcohol. At the hearing, Bishoff testified that he arrested defendant for DUI based on the clues he observed on the HGN test, the odor of an alcoholic beverage on defendant, defendant's glassy, bloodshot eyes, and his admission to drinking. Bishoff also considered that defendant was likely coming from a bar when the accident happened based on defendant's statement that he had been "downtown." Bishoff testified that he also considered the accident and the statements by the security guard when he arrested defendant for DUI.

¶ 9 Bishoff admitted that a person could smell of an alcoholic beverage if he only had one drink and that he had no way of knowing how much someone drank based solely on smell. He also admitted that he did not ask defendant if he could explain his bloodshot eyes or if dirt or debris got into his eyes during the accident. Bishoff testified that defendant initially seemed honest with him, but Bishoff questioned whether defendant was telling the truth about having only one drink because defendant said he was "coming from downtown" which "is a bar area." Based on the time of defendant's accident and that defendant was coming from downtown, Bishoff assumed defendant was coming from a bar. Bishoff admitted it is not illegal to consume alcohol and drive. He also admitted that accidents have many causes and said he did not arrest defendant for DUI because he had an accident. Bishoff admitted that he had no training in accident reconstruction that would help him determine the cause of defendant's accident. Bishoff also admitted that he had no record or recollection of defendant having slurred speech.

¶ 10 Bishoff testified that defendant refused to perform a portable breath test (PBT) before his arrest. The State then asked Bishoff if he asked defendant to provide a blood, breath, or urine sample after his arrest, and defense counsel objected. The trial court sustained the objection. The parties stipulated to Bishoff's training and experience. Defendant stipulated that Bishoff properly explained the HGN test but did not stipulate that he performed the test correctly on defendant.

¶ 11 On December 22, 2015, the trial court granted defendant's motion to suppress evidence and quash arrest. The court explained that Bishoff's testimony that HGN testing can determine the level of intoxication was wrong under *People v. McKown*, 236 Ill. 2d 278 (2010), and caused the court to call into question his "credibility on the issue of impairment in this case" as well as the HGN test itself "in terms of the officer's experience, knowledge of the standards, and how it was conducted." The court also took issue with Bishoff's failure to investigate whether defendant

4

had a head injury that may have affected his performance on the HGN test and the State's failure to call the security guard to testify about his observations of defendant's driving.

¶ 12    Thereafter, the State filed a motion to reconsider and an amended motion to reconsider, arguing that the trial court should have allowed evidence of defendant's post-arrest refusal to submit to chemical testing to be admitted at the suppression hearing. The State also filed a motion to reopen proofs, seeking to introduce defendant's medical records as evidence. The trial court denied the State's motions to reconsider and motion to reopen proofs. On March 16, 2016, the State filed a notice of appeal, appealing the trial court's ruling on defendant's motion to suppress.

¶ 13    On April 12, 2016, the trial court held a hearing on defendant's petition to rescind. The State filed a notice of intent to use subpoenaed medical records containing statements and observations of defendant on the date of the accident. The trial court denied the State's motion. The parties stipulated that, if called to testify, Bishoff would provide the same testimony as he provided at the suppression hearing.

¶ 14    Defendant testified at the rescission hearing that he vaguely remembered the night of the accident because he hit his head when he crashed his motorcycle. He testified that he travelled from his house in Morton to Pulse Gentlemen's Club in downtown Peoria, where he drank one 20-ounce beer. He did not believe his alcohol consumption had anything to do with his accident. Defendant said he refused to take a PBT because he had shattered his heel in the accident, was agitated, and wanted to leave the hospital.

¶ 15    The trial court granted defendant's petition to rescind based on Bishoff's testimony at the suppression hearing, its ruling on defendant's motion to suppress, and "in consideration of Defendant Garrett Motzko's testimony."

¶ 16                                    ANALYSIS

¶ 17                              I. Motion to Suppress

¶ 18        The State argues that the trial court erred in granting defendant's motion to suppress evidence. In reviewing a trial court's ruling on a motion to suppress, we accord great deference to the trial court's factual and credibility determinations. *People v. Simpson*, 2015 IL App (1st) 130303, ¶ 22. When a trial judge makes a credibility finding at a suppression hearing, we should be reluctant to substitute our judgment for that of the trial court. *People v. Nolan*, 59 Ill. App. 3d 177, 186 (1978). The trial court is in a far better position to judge the credibility of the witnesses. *Id*. When a trial court's ruling on a motion to suppress involves factual and credibility assessments, the ultimate ruling will not be disturbed on appeal unless it is manifestly erroneous. *People v. Boomer*, 325 Ill. App. 3d 206, 209 (2001). However, the trial court's ultimate determination with respect to probable cause is reviewed *de novo*. *Id*.

¶ 19        "Probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime." *People v. Wear*, 229 Ill. 2d 545, 563 (2008). Such a determination must be based on the totality of the circumstances at the time of the arrest. *People v. Day*, 2016 IL App (3d) 150852, ¶ 22. Probable cause must rise to a level higher than mere suspicion. *Id.*

¶ 20        The odor of alcohol on a defendant's breath and his inadequate performance of a field sobriety test do not constitute reasonable grounds to believe that the defendant was driving under the influence. See *Boomer*, 325 Ill. App. 3d at 209 (citing *People v. Tucker*, 245 Ill. App. 3d 161 (1993)). Speeding and being involved in an accident are insufficient bases upon which to support a DUI probable cause determination. See *Boomer*, 325 Ill. App. 3d at 211 (officer lacked probable cause to arrest defendant for DUI where defendant was involved in accident, admitted

6

drinking, and had the odor of alcoholic beverage on his breath); *People v. O'Brien*, 227 Ill. App. 3d 302, 307 (1992) (no probable cause to arrest defendant for DUI where defendant was speeding, admitted to drinking, and unsuccessfully performed sobriety test). Finally, a defendant's consumption of alcohol and glassy bloodshot eyes "are not enough to lead a reasonably cautious person to believe that the defendant had committed the crime of DUI." *Day*, 2016 IL App (3d) 150852, ¶ 38. Where a defendant admitted to drinking, " 'had the strong odor of alcohol on his breath,' " had bloodshot eyes, and slurred his speech, the trial court properly ruled that the officer lacked probable cause to arrest the defendant for DUI because any suspicions of impairment were not corroborated by other factors, such as poor driving, stumbling, falling, or an inability to communicate. See *Day*, 2016 IL App (3d) 150852, ¶¶ 23, 37-38.

¶ 21    Evidence of HGN testing, when performed according to protocol by a properly trained officer, is admissible for the purpose of showing that the subject has likely consumed alcohol. *McKown*, 236 Ill. 2d at 306. While HGN testing is an indicator of alcohol consumption, it is not necessarily a sign of impairment. *Id*. at 302. There should be no attempt to correlate HGN test results with any particular blood-alcohol level or range or level of intoxication. *Id*. For the results of HGN testing to be admissible, a proper foundation must be laid, showing that the witness is properly trained and performed the test in accordance with proper procedures. *Id*. at 306. "The admissibility of HGN evidence in an individual case will depend on the State's ability to lay a proper foundation and to demonstrate the qualifications of its witness ***." *Id*. at 314.

¶ 22    Here, Bishoff testified that he arrested defendant for DUI based on the odor of an alcoholic beverage on defendant's breath, defendant's glassy and bloodshot eyes, and his admission to drinking. However, Bishoff admitted that he could not tell how much defendant

7

drank based on the "slight odor" of an alcoholic beverage on defendant's breath. He also testified that defendant seemed honest to him before admitting that he had one drink. Additionally, Bishoff admitted that he never asked defendant about the condition of his eyes, including if they were irritated as a result of the accident.

¶ 23    As set forth in *Day*, the odor of an alcoholic beverage, admission to drinking, and glassy and bloodshot eyes are insufficient to create probable cause for a DUI without evidence of other factors to support impairment, such as poor driving, stumbling, falling, or an inability to communicate. *Day*, 2016 IL App (3d) 150852, ¶¶ 23, 37-38. There was no testimony or evidence that any of these factors were present to support Bishoff's assumption that defendant was driving under the influence.

¶ 24    Bishoff testified that he also considered the accident and the testimony of the security guard in determining that defendant was impaired. However, Bishoff admitted that he did not question the security guard about exactly how fast he thought defendant was driving and further that he had no experience in accident reconstruction that would cause him to believe that the accident was caused by the defendant being impaired. Speeding and being involved in an accident are insufficient bases upon which to support a DUI probable cause determination. See *Boomer*, 325 Ill. App. 3d at 211; *O'Brien*, 227 Ill. App. 3d at 307.

¶ 25    Finally, Bishoff testified that defendant's performance on the HGN test caused him to believe that defendant was impaired. Bishoff explained how he performed the HGN test on defendant and said that he used the test to determine that defendant was "over .08 or intoxicated." He testified that he was taught that HGN proves impairment and is "one of the most *** accurate tests in determining somebody to be over a .08." However, as explained by the supreme court in *McKown*, HGN testing is an indicator of alcohol consumption but is not an

8

indicator of a specific level of impairment. See *McKown*, 236 Ill. 2d at 302; see also Pamela J. Jensen, *Frye Versus Daubert: Practically the Same?*, 87 Minn. L. Rev. 1579, 1595 n. 90 (2003) ("States have almost uniformly excluded HGN testing as evidence of a specific blood alcohol level, as opposed to evidence of alcohol consumption ***[.]"); William Redfairn & Bruce Nelson, *The ABCs of FSTS: A Brief Summary of Field Sobriety Tests in DUI Cases*, Nev. Law., Sept. 2006, at 8, 12 ("[T]he general consensus is that the HGN *** is admissible to show impairment but not to show a specific alcohol level."). By stating that HGN testing was the most reliable indicator of whether someone has a blood alcohol level of .08, Bishoff showed that he was not properly trained to understand and interpret the results of HGN testing. The trial court did not err in giving little to no weight to Bishoff's determination that defendant failed the HGN test because the State failed to show that Bishoff possessed the expertise to properly understand the results of HGN testing. See *McKown*, 236 Ill. 2d at 306, 314.

¶ 26    At the suppression hearing, the trial court stated that it questioned Bishoff's "credibility on the issue of impairment in this case." Where the trial court finds the State's primary or only witness at a suppression hearing to lack credibility, the trial court does not err in granting the defendant's motion to suppress. See *People v. Stehman*, 203 Ill. 2d 26, 33 (2002); *People v. Luna*, 322 Ill. App. 3d 855, 860 (2001); *People v. Boston*, 73 Ill. App. 3d 107, 109-10 (1979). Because Bishoff was the only witness to testify at the suppression hearing and the trial court questioned his credibility, the trial court properly granted defendant's motion to suppress. See *Stehman*, 203 Ill. 2d at 33; *Luna*, 322 Ill. App. 3d at 860; *Boston*, 73 Ill. App. 3d at 109-10.

¶ 27                    II. Motions to Reconsider

¶ 28    The State argues that the trial court erred in denying its motions to reconsider, asserting that the court misapplied section 11-501.2(c) of the Illinois Vehicle Code (Code) (625 ILCS

5/11-501.2(c) (West 2014)) by refusing to consider defendant's post-arrest refusal to submit to chemical testing. When a motion to reconsider raises the question of whether the trial court erred in its application or purported misapplication of existing law, our review is *de novo*. *People v. $280,020 United States Currency*, 372 Ill. App. 3d 785, 791 (2007).

¶ 29 Section 11-501.2(c) of the Code provides in pertinent part: "If a person under arrest refuses to submit to a chemical test under the provisions of Section 11-501.1, evidence of refusal shall be admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person under the influence of alcohol *** was driving or in actual physical control of a motor vehicle." 625 ILCS 5/11-501.2(c)(1) (West 2014). Section 11-501.1 of the Code, referenced in section 11-501.2(c), states in pertinent part:

> "(a) Any person who drives or is in actual physical control of a motor vehicle upon the public highways of this State shall be deemed to have given consent, subject to the provisions of Section 11-501.2, to a chemical test or tests of blood, breath, or urine for the purpose of determining the content of alcohol *** in the person's blood if arrested *** for any offense as defined in Section 11-501 ***. If a law enforcement officer has probable cause to believe the person was under the influence of alcohol, *** the law enforcement officer shall request a chemical test or tests which shall be administered at the direction of the arresting officer." 625 ILCS 5/11-501.1(a) (West 2014).

¶ 30 While section 11-501.2(c) provides that refusal to submit to chemical testing is admissible in any "action or proceeding," that is only true when testing is requested in compliance with section 11-501.1, which requires that the officer have probable cause to believe the defendant is under the influence of alcohol. See 625 ILCS 5/11-501.1(a), 501.2(c) (West

10

2014). Because the trial court determined that Bishoff lacked probable cause to believe that defendant was under the influence of alcohol, defendant's refusal to submit to chemical testing was not admissible.

¶ 31     Assuming, *arguendo*, that defendant's refusal to submit to chemical testing was admissible under section 11-501.2(c) of the Code, the trial court did not err in refusing to consider that evidence at the suppression hearing. Evidence must be relevant to be admissible. *People v. Ross*, 395 Ill. App. 3d 660, 678 (2009). The only issue at the suppression hearing was whether Bishoff had probable cause to arrest defendant for DUI. Any postarrest actions by defendant were not and could not have been relied on by Bishoff as probable cause for arresting defendant for DUI. Thus, the evidence was not relevant, and the trial court properly refused to consider it.

¶ 32                              III. Petition to Rescind

¶ 33     Finally, the State argues that the trial court lacked subject matter jurisdiction to grant defendant's petition to rescind because it appealed the trial court's order granting defendant's motion to suppress before the court ruled on defendant's petition to rescind.

¶ 34     Subject matter jurisdiction refers to the power of a court to hear and determine cases of the general class to which the case in question belongs. *People v. Castleberry*, 2015 IL 116916, ¶ 12. As long as an alleged claim falls within the general class of cases that the court has the inherent power to hear and decide, subject matter jurisdiction exists. *In re Luis R.*, 239 Ill. 2d 295, 301 (2010).

¶ 35     A petition to rescind the statutory summary suspension of driving privileges presents a justiciable matter over which the trial court has subject matter jurisdiction. *People v. Guillermo*, 2016 IL App (1st) 151799, ¶ 9; *People v. Keegan*, 334 Ill. App. 3d 1061, 1065 (2002). Thus, the

11

State's claim that the trial court lacked subject matter jurisdiction to rule on defendant's petition lacks merit. See *Guillermo*, 2016 IL App (1st) 151799, ¶ 9.

¶ 36 In arguing that the trial court lacked jurisdiction to rule on defendant's petition, the State fails to acknowledge that a summary suspension hearing "is a civil proceeding, separate and apart from the criminal hearing regarding the charge of driving while under the influence of alcohol." *People v. Lagowski*, 273 Ill. App. 3d 1012, 1013 (1995). Statutory summary suspension "operates without regard to the resolution of the companion DUI case." *People v. Schuld*, 175 Ill. App. 3d 272, 284 (1988). Summary suspension "progresses independently of the related criminal prosecution for DUI." *People v. Meyer*, 166 Ill. App. 3d 1030, 1033 (1988). A circuit court may not rescind a statutory summary suspension based solely on the disposition of the underlying criminal proceedings. *People v. Schaefer*, 154 Ill. 2d 250, 257-58 (1993); *People v. Gerke*, 123 Ill. 2d 85, 95 (1988).

¶ 37 Section 2-118.1 of the Code "sets forth a comprehensive procedure for the conduct of a prompt judicial hearing when a person seeks to rescind the statutory summary suspension of his driving privileges." *Keegan*, 334 Ill. App. 3d at 1064. The scope of the hearing is limited to specific issues, including the following:

> "1. Whether the person was placed under arrest for an offense as defined in Section 11-501 ***; and
>
> 2. Whether the officer had reasonable grounds to believe that the person was driving *** upon a highway while under the influence of alcohol ***; and
>
> 3. Whether the person, after being advised by the officer that the privilege to operate a motor vehicle would be suspended or revoked if the person refused to submit to and complete the test or tests, did refuse to submit to or complete the

12

test or tests [authorized under Section 11-501.1.]" 625 ILCS 5/2-118.1(b) (West 2014).

¶ 38     The scope of a court's inquiry in a statutory summary suspension hearing is limited by the terms of the statute. *Gerke*, 123 Ill. 2d at 95. Reasonable grounds for believing a person was driving under the influence within the meaning of the summary suspension statute is synonymous with probable cause for arrest for DUI. *People v. Rush*, 319 Ill. App. 3d 34, 38 (2001). Therefore, a trial court may consider and rely on the same evidence for both a motion to suppress and a petition to rescind. See *id.*

¶ 39     Here, the trial court granted defendant's petition to rescind after finding that Bishoff lacked probable cause to arrest defendant for DUI and after the State appealed that ruling. The State's appeal did not require the court to stay the rescission hearing until after the criminal appeal was decided because defendant's criminal DUI prosecution and summary suspension hearing are separate and distinct proceedings. See *Lagowski*, 273 Ill. App. 3d at 1013; *Meyer*, 166 Ill. App. 3d at 1033. The results of one do not affect the results of the other. See *Schaefer*, 154 Ill. 2d at 257-58; *Gerke*, 123 Ill. 2d at 95; *Schuld*, 175 Ill. App. 3d at 284.

¶ 40     The trial court also did not err in considering evidence from the suppression hearing in granting defendant's petition to rescind. The issue at defendant's suppression hearing was whether Bishoff had probable cause to arrest defendant for DUI. The issue at the rescission hearing was whether there were reasonable grounds for believing defendant was driving under the influence. Because those issues are identical, the trial court could rely on evidence from the suppression hearing to make its decision on defendant's petition to rescind. See *Rush*, 319 Ill. App. 3d at 38.

¶ 41        Moreover, the State waived any objection to the admission of evidence from the suppression hearing. The failure to present a proper and timely objection constitutes a waiver of any error. *People v. Holloman*, 46 Ill. 2d 311, 318 (1970). Additionally, a party may not complain on appeal about the admission of evidence that the party stipulated to below. *Id*. at 318-19. Here, not only did the State fail to object to the trial court's consideration of evidence from the suppression hearing, but it stipulated to the admission of Bishoff's testimony from the suppression hearing. Thus, the State waived any alleged error. See *id*.

¶ 42                                    CONCLUSION

¶ 43        The judgment of the circuit court of Peoria County is affirmed.

¶ 44        Affirmed.