**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200517-U

Order filed September 16, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0517 Circuit No. 20-DT-199 |
| | ) | |
| ANGEL E. CAMACHO-LOPEZ, | ) ) | Honorable Thomas Cunnington, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Schmidt and Wright concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*: The court did not err in denying the defendant's petition to rescind statutory
        summary suspension.

¶ 2     The defendant, Angel E. Camacho-Lopez, appeals from the denial of his petition to rescind

statutory summary suspension, arguing that the officer did not have reasonable grounds to believe

he was driving under the influence, and he should have been allowed to refuse to take a

breathalyzer because of the COVID-19 pandemic.

¶ 3                                    I. BACKGROUND

¶ 4          Just after midnight on September 6, 2020, the defendant was ticketed for driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2018)). At this time, the defendant was also served a Notice of Summary Suspension, which stated that the defendant's license would be suspended for a minimum of 12 months because he refused to submit to or failed to complete chemical testing. The officer wrote on the notice that he had reasonable grounds to believe the defendant had violated section 11-501 because the defendant (1) was speeding 88 miles per hour in a 55 mile-per-hour zone, (2) drifted within the lane, (3) touched the lane lines, (4) had red bloodshot eyes, (5) had a strong odor of an alcoholic beverage on his breath, (6) admitted to drinking, and (7) showed numerous clues of impairment during the field sobriety tests.

¶ 5          The defendant filed a petition to rescind statutory summary suspension on October 20, 2020, and a hearing was held on November 18, 2020. The defendant sought to argue both that the officer did not have reasonable grounds to believe he was driving under the influence and that he should not have been required to submit to a breathalyzer test due to COVID-19. The court stated that statute provided specific grounds for a defendant to challenge his statutory suspension, it did not include COVID-19, and it did not have the authority to extend the statute. Therefore, it struck that portion of the defendant's petition.

¶ 6          The defendant testified that on September 5, 2020, he and his family drove to Indiana in the morning. He had lunch and then went to his wife's uncle's ranch, where he drank a mixed drink with tequila around 11:30 a.m. or 12:00 p.m. He had another mixed drink around 3:30 or 4:00 p.m. and a third around 9-9:30 p.m. He and his family then began driving home between 10-10:45 p.m. He was pulled over around 11:00 p.m. The officer told him he had been speeding and asked if he had been drinking. The defendant told the officer he had a couple of drinks. The officer

did not ask him what kind of alcohol he had consumed or when he had last consumed alcohol. The officer asked the defendant to get out of the car and began conducting field sobriety tests, including the Horizontal Gaze Nystagmus (HGN), the walk and turn, and the one-legged stand. The defendant stated that he understood what the officer told him to do for the tests. The defendant stated that he never lost his balance and believed he completed the field sobriety tests correctly. The defendant also said that he did not understand everything the officer told him because Spanish was his first language. He was then placed under arrest.

¶ 7        Officer Jason Hawkins testified that he was working patrol on night of September 5 into the morning of September 6, 2020. He pulled the defendant over for speeding 88 miles per hour in a 55 mile-per-hour zone. Hawkins stated that the defendant had been swerving while driving, and he had observed the car's tires touch the center line and the outside line multiple times. Hawkins approached the vehicle and noticed that the defendant slurred his speech, had red, bloodshot eyes, and had a strong odor of an alcoholic beverage emitting from him. The defendant told Hawkins that he had had a couple of drinks. The defendant did not express any difficulty understanding Hawkins. Hawkins asked the defendant if he needed an interpreter, but Hawkins stated that he did not. Hawkins stated that he conducted three field sobriety tests, and the defendant exhibited indicators of impairment on all three tests. He stated that the clues were fully set out in his report, which is not part of the record on appeal. Hawkins first conducted the HGN test, and the defendant displayed all three clues of impairment. He then conducted the walk and turn test. Hawkins said the defendant missed steps when walking back. Lastly, Hawkins administered the one-legged stand test, where the defendant was supposed to keep his leg up until he was told to stop. The defendant put his foot down before he was told to stop, but Hawkins did not remember how many times. Hawkins stated that the video from his squad car would provide information regarding the

completion of the test. Hawkins arrested the defendant for DUI based on his driving, the observations he made of the defendant's person, his admission to drinking, and his indicators of impairment on the field sobriety tests.

¶ 8        The squad car video was played in court. The beginning of the video shows the defendant's car swerving within the lane and touching the lane lines on both sides. Once the officer put on his overhead lights, the defendant pulled over two lanes of traffic and onto the side of the road without putting his turn signal on. After pulling the defendant over, Hawkins had the defendant get out of the car. Hawkins asked the defendant if he could understand him, and he stated that he could. Hawkins asked the defendant how many drinks he had had that night, and the defendant stated, "a couple." Hawkins told the defendant that since he was speeding, swerving within the lane, and admitted to drinking, he was going to conduct some field sobriety tests. Hawkins again asked the defendant if he understood and asked whether he needed to get a translator. The defendant stated that he understood Hawkins and that he did not need a translator. Hawkins first administered the HGN test. He told the defendant to follow his finger with his eyes only and not to move his head. He asked the defendant if he understood and whether he had any brain or eye injuries. The defendant stated that he understood and did not have any injuries. While administering the test, Hawkins again told the defendant to follow his finger, stating that the defendant was stopping in the middle when he was not supposed to. Next, Hawkins administered the walk and turn test. He explained the test, showed the defendant how to do it, and then asked the defendant if he understood or had any questions. The defendant stated that he understood. The defendant did not say the steps out loud as Hawkins has told him to. Hawkins then had the defendant do the one-legged stand test. He told the defendant to raise one leg, whichever one he wanted, and then count until Hawkins told him to stop. Hawkins showed the defendant how to do it, and the defendant did

4

not ask any questions. The defendant raised his right leg for three seconds, put it down, and then raised his left leg for three seconds. Hawkins said that was enough and then arrested the defendant for DUI.

¶ 9 At the conclusion of the defendant's case, the State moved for a directed finding. The court granted the motion, finding that the defendant had not established a *prima facie* case that Hawkins had not had a reasonable suspicion to believe that the defendant was driving under the influence.

¶ 10 II. ANALYSIS

¶ 11 On appeal, the defendant first argues Hawkins did not have a reasonable suspicion to believe he was driving under the influence. Section 11-501.1 of the Illinois Vehicle Code (Code) concerns statutory drivers license suspensions. 625 ILCS 5/11-501.1 (West 2018). When a motorist is arrested for DUI, the arresting officer shall ask the motorist to submit to a chemical test. 625 ILCS 5/11-501.1(a) (West 2018). If the defendant refuses, the motorist's driving privileges will be summarily suspended. 625 ILCS 5/11-501.1(c) (West 2018). The motorist may seek recission of the summary suspension of their license by making a written request within 90 days of receiving the notice of summary suspension. 625 ILCS 5/2-118.1(b) (West 2018). Section 2-118.1(b) limits the issues a motorist may raise when seeking recission to whether (1) the motorist was placed under arrest for a DUI offense, (2) the officer had reasonable grounds to believe the motorist was driving under the influence of alcohol, (3) the motorist refused to submit to or complete the chemical testing, and (4) the motorist did complete the chemical test and the test disclosed an alcohol concentration of 0.08 or more. *Id.* "In summary suspension proceedings, 'reasonable grounds' is synonymous with 'probable cause,' requiring a determination whether a reasonable person, armed with the objective knowledge possessed by the officer at the time of the

arrest, would believe that the defendant committed the offense." *People v. Acevedo*, 2017 IL App (3d) 150750, ¶ 17.

¶ 12     This appeal is premised on the trial court's granting of the State's motion for a directed finding. The defendant bears the burden of proof with respect to the grounds for recission. *People v. Relwani*, 2019 IL 123385, ¶ 16. If the defendant fails to make a *prima facie* case for recission, the State is entitled to a directed finding. *Id.* ¶ 17. A directed finding, thus, is entered before the State has presented any evidence. *Id.* Only if the defendant makes a sufficient *prima facie* showing, does the burden shift to the State to present evidence justifying suspension. *Id.* While in recission cases we normally apply the same two-part standard of review used on appeal from motions to suppress (reviewing factual findings under the manifest weight standard and the legal ruling *de novo*), " '[t]he trial judge's finding as to the *prima facie* case will not be overturned upon appeal unless against the manifest weight of the evidence.' " *Id.* ¶ 18 (quoting *People v. Orth*, 124 Ill. 2d 326, 341 (1988)). A finding is only against the manifest weight of the evidence where the opposite conclusion is clearly evident or the finding is unreasonable, arbitrary, or not based on the evidence. *Relwani*, 2019 IL 123385, ¶ 18.

¶ 13     Here, the defendant had the burden to make a *prima facie* case that Hawkins did not have reasonable grounds to believe that he committed a DUI. A person commits DUI when he or she drives or is in actual physical control of a vehicle while under the influence of alcohol. 625 ILCS 5/11-501(a)(2) (West 2018). The evidence established that (1) the defendant was speeding and swerving within his lane; (2) had bloodshot eyes, slurred speech, and smelled of an alcoholic beverage; (3) admitted to drinking; and (4) exhibited clues of impairment on all three of the field sobriety tests. See *People v. Williams*, 2018 IL App (2d) 160683, ¶¶ 14-16 (noting that the odor of an alcoholic beverage, slurred speech, glassy eyes, speeding, and weaving are indicative of

6

impairment). We note that the court was in the best position to observe the conduct of the parties and witnesses, assess their credibility, and give the appropriate weight to the evidence. *People v. Richardson*, 234 Ill. 2d 233, 265 (2009). Based on this evidence, the court found that the defendant failed to make a *prima facie* case for recission. We cannot say that this determination was against the manifest weight of the evidence, and the court did not err in denying the recission petition.

¶ 14      In coming to this conclusion, we reject the defendant's reliance on *People v. Day*, 2016 IL App (3d) 150852, and *People v. Motzko*, 2017 IL App (3d) 160154. Both of those cases found the officer did not have probable cause to arrest the defendants for DUI where the field sobriety tests were improperly administered, which is not a situation we have here. See *Day*, 2016 IL App (3d) 150852, ¶¶ 28-29 (finding that it was improper to administer the field sobriety tests in the rain, against the guidelines of the National Highway Traffic Safety Administration); *Motzko*, 2017 IL App (3d) 160154, ¶¶ 6, 25 (the officer administered an HGN test at the hospital (when the defendant was blind in one eye and may have sustained a head injury in the car accident), was not properly trained to understand and interpret the results of HGN testing, and did not perform any other field sobriety tests).

¶ 15      In the alternative, the defendant argues "[a]s a matter of policy, refusal to take a breathalyzer test during the COVID-19 pandemic should be allowed without penalty where there is no evidence that the breathalyzer instrument was properly disinfected." The defendant admits that there are no cases that have excused submission to a breathalyzer test based on the threat of communicable diseases. Our legislature has specifically and unambiguously limited the grounds by which a defendant may move for the recission of his statutory summary suspension, as stated above (*supra* ¶ 11). The lack of proof that a breathalyzer has been sanitized is not one of the enumerated grounds for recission. 625 ILCS 5/2-118.1(b) (West 2018). We cannot expand the

7

meaning of an unambiguous statute. *Shields v. Judges' Retirement System of Illinois*, 204 Ill. 2d 488, 497 (2003). Moreover, we note that, if the defendant was concerned about the sanitariness of the breathalyzer, he could have addressed it with the officer before submitting to a breathalyzer test, which the record does not show that he did.

¶ 16                                    III. CONCLUSION

¶ 17          The judgment of the circuit court of Kankakee County is affirmed.

¶ 18          Affirmed.