NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220250-U

NO. 4-22-0250

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 13, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| RAKEEM D. HARRIS, | ) | No. 21DT690 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. Jason Chambers, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding the circuit court (1) properly denied
defendant's petition to rescind his summary suspension, (2) did not find
defendant's motion to reconsider untimely, and (3) was not required to perform a
preliminary *Krankel* inquiry.

¶ 2    Defendant, Rakeem D. Harris, appeals from the McLean County circuit court's

judgment denying his petition to rescind the summary suspension of his driver's license.

Defendant, *pro se*, argues the circuit court erred when it (1) denied his petition, (2) found his

motion to reconsider untimely, and (3) failed to perform a preliminary inquiry pursuant to *People*

*v. Krankel*, 102 Ill. 2d 181 (1984). The State argues the circuit court (1) properly denied the

petition, (2) never ruled defendant's motion to reconsider was untimely, and (3) was not

obligated to conduct a preliminary *Krankel* inquiry. We agree with the State and affirm the

circuit court's judgment.

¶ 3                                I. BACKGROUND

¶ 4         In November 2021, the State charged defendant via citation and complaint with driving under the influence (DUI) (625 ILCS 5/11-501(a)(2) (West 2020)). Defendant refused to submit to chemical testing, and his driving privileges were therefore summarily suspended pursuant to section 11-501.1 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-501.1 (West 2020)), to be effective January 5, 2022. In December 2021, defendant, represented by private counsel, filed a petition to rescind the statutory summary suspension of his driving privileges. Specifically, defendant argued the arresting officer did not have reasonable grounds (1) to stop defendant's vehicle and (2) to believe defendant was driving while under the influence of alcohol.

¶ 5              A. Petition to Rescind Summary Suspension Hearing

¶ 6         On January 25, 2022, the circuit court held a hearing on defendant's petition.

¶ 7                            1. *Defendant*

¶ 8         At the hearing, defendant testified he was stopped by police officers around 4 a.m. on November 16, 2021, on East Hamilton Road in Bloomington, Illinois. That evening, defendant had been visiting a woman when he decided to take a drive. Immediately prior to being stopped, defendant was driving westbound on East Hamilton, where he then proceeded right onto Commerce Parkway, and turned right again onto Veterans Parkway.

¶ 9         As he turned right onto Veterans from Commerce, defendant observed a car pass by him "going fast." Defendant remembered the vehicle "resembled a [Dodge] Charger," as it had a popular style of "racetrack" taillights similar to that of a Dodge Charger and other vehicles. Defendant himself was driving a Dodge Charger that evening.

¶ 10        From Veterans, defendant turned right again onto Morrissey Drive, making a loop. On Morrissey Drive, defendant observed a police officer activate his patrol car's lights, and defendant turned left onto Hamilton where he stopped. After stopping defendant, the officer informed him he was being pulled over for "speeding over the bridge on Veterans Parkway." Defendant explained it was not his car, he was not coming from that direction, and had not been on the bridge going eastbound on Veterans at all. Defendant denied ever speeding, drinking alcohol, driving erratically, or having any other difficulty operating his vehicle.

¶ 11        Defendant testified he was asked to step out of his vehicle, which he did. At this point, he was not asked to perform any field sobriety tests or provide a breath sample. Defendant was placed under arrest for speeding and was later transported to the police station, where he refused to perform field sobriety tests.

¶ 12        On cross-examination, defendant agreed he did not exit his vehicle for about 15 minutes after being asked to do so several times by police officers. Defendant claimed he did not "so much [refuse]," but rather "explained to them that they had the wrong person." Defendant admitted that when asked to produce his driver's license, he could not do so because he did not have it with him and instead provided his passport card. Defendant agreed that a police officer informed defendant he was "traveling 92 [miles per hour]," and that the officer "showed [him] a radar gun." Defendant denied being able to see a reading on the radar gun when the officer placed it next to defendant's window.

¶ 13        Following defendant's testimony, the State moved for a directed finding, arguing defendant failed to show he was unlawfully stopped and therefore the summary suspension of his driver's license was proper. The court made a directed finding the arresting officer had reasonable grounds to stop defendant's car but allowed defendant to proceed on his allegation the

arresting officer lacked reasonable grounds to believe defendant had been driving while under the influence of alcohol or drugs.

¶ 14                                     2. *Adam Stone*

¶ 15            Adam Stone testified he was a police officer with the Bloomington Police Department. On November 16, 2021, around 4:05 a.m., Officer Stone was conducting "radar checks" in the area of Veterans and Commerce. He testified there were also three or four other officers in the area conducting checks. One of the other officers, Officer Turner, sent a message over the radio stating he had clocked a vehicle "traveling 92 [miles per hour]" on Veterans. Officer Turner described the vehicle as a "newer black Dodge Charger" traveling "northbound on Veterans approaching Morrissey." Officer Stone explained that section of Veterans actually runs east and west; the direction the car Officer Turner observed would have been traveling eastbound. Officer Stone estimated he stopped defendant's car within about "30 seconds" of hearing Officer Turner's radio message.

¶ 16            After stopping defendant's car, Officer Stone asked defendant for his driver's license and insurance, neither of which he could provide. Defendant provided his passport card, which Officer Stone took back to his patrol car to look up defendant's information. Officer Turner arrived shortly thereafter and confirmed Officer Stone had stopped the same car he observed speeding. Officer Stone testified the posted speed limit was 45 miles per hour, and defendant's alleged speed of 92 miles per hour was a "criminal offense," which is why he asked defendant to exit the vehicle. Defendant refused to exit his car for about 15 minutes. When defendant eventually exited the car, the officers placed defendant under arrest for speeding and resisting arrest. While placing defendant under arrest, Officer Stone "noticed [defendant's] eyes were bloodshot and glassy and the odor of an alcoholic beverage was emitting from his breath."

¶ 17        Officer Stone testified he was equipped with a body-worn camera that evening, and a disk containing footage from his interaction with defendant was admitted into evidence as People's Exhibit No. 1 and published to the court. In the video footage, defendant denies speeding and has his driver's side window up for most of the interaction prior to exiting. Defendant claimed to be a "diplomatic ambassador" and repeatedly asked to speak with the "embassy" or "consulate." Defendant could not identify which one he wanted to contact after being informed there were different consulates for different countries. Following defendant's arrest and transport to the Bloomington Police Department, defendant refused to submit to field sobriety tests.

¶ 18        On cross-examination, Officer Stone agreed Officer Turner did not indicate the speeding car displayed any "signs [he] would look for" for a suspected DUI. He further agreed defendant did not have any slurred speech, was responsive to the officers' questions, and had no trouble exiting his vehicle or producing his identification from his wallet.

¶ 19        Following arguments, the circuit court found there were reasonable grounds to believe defendant had been operating a motor vehicle while under the influence of alcohol. The court denied defendant's petition and sustained the summary suspension of his driver's license.

¶ 20                              B. Additional Proceedings

¶ 21        On February 8, 2022, defendant's counsel filed a motion to withdraw her representation of defendant, alleging an irretrievable breakdown had occurred in the attorney-client relationship and defendant consented to her withdrawal.

¶ 22        On February 15, 2022, defendant *pro se* filed a motion to reconsider the circuit court's denial of his petition to rescind the summary suspension. Defendant argued he was not arrested for DUI but rather for misdemeanor speeding and therefore no "implied consent" existed

for him to submit to field sobriety testing. Based on the lack of implied consent, he argued, his refusal to submit to chemical testing did not warrant the statutory summary suspension of his driver's license. Defendant also argued his counsel was ineffective for failing to raise the aforementioned issues at the previous hearing.

¶ 23        Following a February 23, 2022, hearing, the circuit court (1) allowed defense counsel's motion to withdraw and (2) denied defendant's motion to reconsider.

¶ 24        This appeal followed.

¶ 25                                II. ANALYSIS

¶ 26        On appeal, defendant, *pro se*, argues the circuit court erred when it (1) denied his petition, (2) found his motion to reconsider untimely, and (3) failed to perform a preliminary inquiry pursuant to *Krankel*, 102 Ill. 2d at 181. The State argues the circuit court (1) properly denied the petition, (2) never ruled defendant's motion to reconsider was untimely, and (3) was not obligated to conduct a preliminary *Krankel* inquiry. We agree with the State and affirm the circuit court's judgment.

¶ 27                           A. Summary Suspension

¶ 28        Defendant argues the trial court erroneously denied his petition to rescind his summary suspension because (1) he was not arrested for DUI; (2) the officers lacked probable cause to arrest him for DUI; (3) as he was not arrested for DUI, there was no implied consent for chemical testing; and (4) his refusal to submit to chemical testing was therefore not a proper basis for the summary suspension of defendant's driver's license. Defendant further argues the officers lacked probable cause to arrest him for speeding because the State failed to present evidence Officer Turner's radar was properly "tuned."

¶ 29                              1. *Applicable Law*

¶ 30         The Vehicle Code prohibits motorists from driving while under the influence of alcohol. 625 ILCS 5/11-501 (West 2020). In addition to criminal penalties, a motorist arrested for DUI may have his driving privileges suspended. 625 ILCSC 5/11-501.1 (West 2020). A motorist who is arrested for DUI is "deemed to have given consent *** to a chemical test or tests of blood, breath, other bodily substance, or urine for the purpose of determining the content of alcohol *** in the person's blood if arrested." 625 ILCS 5/11-501.1(a) (West 2020). A motorist who refuses to submit to chemical testing upon arrest for DUI is subject to a statutory summary suspension of their driving privileges. 625 ILCS 5/11-501.1(g) (West 2020).

¶ 31         If a motorist's driving privileges are summarily suspended under section 11-501.1(g) of the Vehicle Code, the motorist may petition for rescission of that suspension. 625 ILCS 5/2-118.1 (West 2020). A hearing on a petition to rescind a summary suspension is a civil proceeding in which the motorist bears the burden of proof. *People v. Wear*, 229 Ill. 2d 545, 559-60 (2008) (*abrogated on other grounds by Lange v. California*, 594 U.S. __, 141 S. Ct. 2011 (2021)). If the motorist establishes a *prima facie* case for rescission, the burden then shifts to the State to present evidence justifying the suspension. *Wear*, 229 Ill. 2d at 560. Four issues may be raised in a rescission hearing, including, as is relevant to this appeal, (1) "whether the person was placed under arrest for [DUI] as evidenced by the issuance of a Uniform Traffic Ticket" and (2) "[w]hether the officer had reasonable grounds to believe that the person was driving or in actual physical control of a motor vehicle upon a highway while under the influence of alcohol." 625 ILCS 5/2-118.1(b) (West 2020).

¶ 32         Our supreme court has explained probable cause in the context of statutory summary suspensions as follows:

"Probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime. [Citation.] That is, the existence of probable cause depends upon the totality of the circumstances at the time of the arrest. [Citations.] *** The standard for determining whether probable cause is present is probability of criminal activity, rather than proof beyond a reasonable doubt." (Internal quotation marks omitted.) *Wear*, 229 Ill. 2d at 563-64.

An officer must have more than a mere suspicion, but sufficient evidence for a conviction is not required. *People v. Quigley*, 2018 IL App (1st) 172560, ¶ 34. "Indeed, probable cause does not even demand a showing that the belief that the suspect has committed a crime be more likely true than false." *Wear*, 229 Ill. 2d at 564.

¶ 33        When reviewing the trial court's ruling on a petition to rescind, we defer to the court's factual findings and credibility assessments and will reverse those findings only if they are against the manifest weight of the evidence. *Wear*, 229 Ill. 2d at 560-61. " 'A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' " *People v. Mott*, 389 Ill. App. 3d 539, 543 (2009) (quoting *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)). We accord great deference to the trial court's factual and credibility determinations, as the court is in a better position to judge the credibility of the witnesses. *People v. Nolan*, 59 Ill. App. 3d 177, 186, 375 N.E.2d 445, 452 (1978). However, we review *de novo* the ultimate question of whether the petition should have been granted. *Wear*, 229 Ill. 2d at 562.

¶ 34                                    2. *This Case*

¶ 35                                    a. Forfeiture

¶ 36    As an initial matter, the State argues defendant forfeited any argument the officers failed to establish probable cause to stop defendant for speeding on the basis the State did not present evidence that Officer Turner's radar was properly "tuned." In his reply brief, defendant argues he did not forfeit this issue because "there is testimony in the form of a sworn statement from Officer Turner that admits the [radar] device was insufficiently tested as it was only tested with a single tuning fork instead of two or more." We agree with the State.

¶ 37    Generally, issues not raised in the circuit court are forfeited and may not be raised for the first time on appeal. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). Additionally, "the theory upon which a case is tried in the lower court cannot be changed on review." (Internal quotation marks omitted.) *Haudrich*, 169 Ill. 2d at 536 (quoting *Daniels v. Anderson*, 162 Ill. 2d 47, 58 (1994)).

¶ 38    Here, defendant failed to raise the radar issue in his petition to rescind and did not question Officer Stone regarding whether the radar was properly tuned during his testimony at the hearing. At the hearing, defendant testified he witnessed a vehicle that appeared similar to his own pass him traveling at a high speed. According to defendant, the officers intended to stop that vehicle rather than his. This was consistent with defendant's statements to the officers as seen in the body-worn camera footage. The crux of defendant's argument that the officers lacked probable cause to stop his vehicle was based on identity—not the accuracy of Officer Turner's radar. Defendant is not permitted to change his theory of the case on appeal, and he presents no compelling reason for this court to excuse his forfeiture. Accordingly, we decline to consider the merits of this issue.

¶ 39                    b. Probable Cause

¶ 40        Next, we disagree with defendant's contention he was not arrested for DUI. Although defendant correctly notes he was *initially* arrested for speeding, the record shows defendant was issued a ticket for DUI. The McLean County field arrest report further indicated defendant was charged with both speeding and DUI. The fact that the officers arrested defendant for speeding prior to obtaining probable cause to also arrest defendant for DUI does not negate the fact defendant was also eventually arrested for DUI. Section 2-118.1(b)(1) of the Vehicle Code provides that the issuance of a uniform traffic ticket for DUI is sufficient to show a motorist was placed under arrest for DUI. 625 ILCS 5/2-118.1(b)(1) (West 2020). Because defendant was issued a ticket for DUI in this case, his argument he was not arrested for DUI lacks merit.

¶ 41        Further, the circuit court's factual findings that officers observed defendant (1) speeding and (2) displaying signs of impairment were not against the manifest weight of the evidence. Deferring to the circuit court's credibility determinations, the evidence showed Officer Stone pulled defendant over after receiving a radio message from Officer Turner that he had clocked a car matching defendant's car's description going 92 miles per hour in a 45-mile-per-hour zone. Officer Stone further testified once defendant finally exited the car, he observed defendant's eyes were glassy and bloodshot and the odor of alcohol emanating from defendant's breath. Although defendant claimed Officer Turner clocked a different vehicle speeding and he was not traveling in the direction indicated by Officer Turner in his report, the circuit court rejected this version of the facts in favor of the officers'. Defendant has not shown the opposite conclusion is readily apparent.

¶ 42　　　　Finally, the court's denial of defendant's petition to rescind was proper because its factual findings supported the conclusion the officers had probable cause to arrest defendant for DUI.

¶ 43　　　　Defendant likens his case to *People v. Motzko*, 2017 IL App (3d) 160154, in which the arresting officer testified he placed the defendant under arrest for DUI "based on the odor of an alcoholic beverage on defendant's breath, defendant's glassy and bloodshot eyes, and his admission to drinking," after the defendant was involved in a traffic accident. *Motzko*, 2017 IL App (3d) 160154, ¶ 22. The court noted that as set forth in *People v. Day*, 2016 IL App (3d) 150852, ¶ 23, "[T]he odor of an alcoholic beverage, admission to drinking, and glassy and bloodshot eyes are insufficient to create probable cause for a DUI without evidence of other factors to support impairment, such as poor driving, stumbling, falling, or an inability to communicate." *Motzko*, 2017 IL App (3d) 160154, ¶ 23.

¶ 44　　　　Defendant's case is distinguishable from *Motzko*. We acknowledge defendant is correct that the officers' allegations his breath smelled of alcohol and he had bloodshot, glassy eyes were not sufficient—on their own—to create probable cause. However, unlike in *Motzko*, the circuit court here found the arresting officers' testimony to be credible. See *Motzko*, 2017 IL App (3d) 160154, ¶ 11. Additionally, the State in this case also presented evidence that in addition to defendant's eyes and the odor of alcohol, defendant was clocked traveling 92 miles per hour in a 45-mile-per-hour zone, corroborating the officers' other suspicions of impairment. Defendant also would not roll down his window all the way, denied being able to see the number displayed on Officer Turner's radar device when presented to him, and could not identify what consulate he wished to speak with after repeatedly asking to do so. When considered under the

totality of the circumstances, the State presented sufficient facts to lead a reasonably cautious person to believe defendant had committed DUI.

¶ 45                                              B. Motion to Reconsider

¶ 46           Defendant next argues the trial court erroneously denied his motion to reconsider on the basis it was untimely. The State argues the circuit court never made such a ruling and its denial of defendant's motion to reconsider was proper. We agree with the State.

¶ 47           "The purpose of a motion to reconsider is to bring to the court's attention a change in the law, an error in the court's previous application of existing law, or newly discovered evidence that was not available at the time of the hearing." *People v. $280,020 U.S. Currency*, 372 Ill. App. 3d 785, 791 (2007). In *Liceaga v. Baez*, 2019 IL App (1st) 181170, ¶ 25, the First District further explained as follows:

> "A reconsideration motion is not the place to raise a new legal theory or factual argument. [Citations.] Trial courts should not allow litigants to stand mute, lose a motion, and then frantically gather new material to show that the court erred in its ruling. [Citations.] As a result, legal theories and factual arguments not previously made are subject to waiver."

"When reviewing a motion to reconsider that was based only on the trial court's application (or purported misapplication) of existing law, *** our standard of review is *de novo*." *$280,020 U.S. Currency*, 372 Ill. App. 3d at 791.

¶ 48           Defendant claims the following statement by the court at the hearing on his motion to reconsider supports his contention his motion was improperly dismissed as untimely:

> "I think it's two different things that are being considered here in terms of where [*sic*] that arrest was for, because there was the speeding that was alleged, still is

- 12 -

only an allegation, and then later on—obviously officers don't get all the evidence that they have that they want to consider all at once. Sometimes it has layers as it progresses. There are some new things that are brought up in the Motion to Reconsider which I think it's untimely at this point to bring some of those things up."

¶ 49　Defendant's characterization of the court's statement is incorrect. The court did not rule defendant's motion itself was untimely. Read in context, the court was explaining to defendant it was not appropriate to raise, in a motion to reconsider, legal theories and factual arguments that were available to him at the time of his hearing but not presented to the court. See, *e.g.*, *Liceaga*, 2019 IL App (1st) 181170, ¶ 25. In denying defendant's motion, the court based its ruling on "the totality of the circumstances," concluding the State's evidence regarding defendant's speeding and the alleged odor of alcohol on his breath supported a finding probable cause existed to arrest defendant for DUI. The record shows the court's decision was based on the merits and not untimeliness, and its denial of defendant's motion was proper.

¶ 50　　　　　　　　　　C. *Krankel* Inquiry

¶ 51　Finally, defendant argues the trial court failed to conduct a preliminary *Krankel* inquiry despite his *pro se* allegations of ineffective assistance of counsel following the hearing on his petition. The State responds the trial court was not obligated to perform a *Krankel* inquiry because (1) there is no right to the effective assistance of counsel in summary suspension proceedings and (2) defendant chose to proceed *pro se* after his retained counsel was allowed to withdraw. We agree with the State's first argument.

¶ 52　Pursuant to *Krankel* and its progeny, when a defendant raises a *pro se* claim of ineffective assistance of counsel during the criminal proceedings against him, the trial court

should conduct a non-adversarial inquiry to examine the factual basis of the defendant's claim and determine whether new counsel should be appointed. *People v. Jolly*, 2014 IL 117142, ¶ 29. In contrast, a "summary suspension hearing is a civil proceeding separate and apart from the criminal action of driving under the influence of alcohol." *People v. Gerke*, 123 Ill. 2d 85, 93 (1988). Our supreme court has held there is no right to appointed counsel in summary suspension proceedings. See *Koss v. Slater*, 116 Ill. 2d 389, 397 (1987).

¶ 53    Here, the circuit court had no duty to conduct a *Krankel* inquiry following defendant's *pro se* allegations of ineffective assistance of counsel. Although defendant is charged with the criminal offense of DUI, this appeal concerns only the statutory summary suspension of defendant's driver's license—a civil proceeding "separate and apart" from defendant's DUI charge. *Gerke*, 123 Ill. 2d at 93. As stated above, there is no right to appointed counsel in summary suspension proceedings. It follows that the constitutional right to the effective assistance of counsel in criminal proceedings is not implicated in civil summary suspension proceedings. If the effective assistance of counsel is not implicated, it further follows the circuit court lacks a duty to conduct a *Krankel*-style inquiry when *pro se* claims of "ineffective assistance" are raised following summary suspension proceedings. Defendant cites no authority imposing such a duty, and we find none exists. Accordingly, the circuit court in this case did not err when it did not conduct a *Krankel* inquiry.

¶ 54                              III. CONCLUSION

¶ 55    For the reasons stated, we affirm the trial court's judgment.

¶ 56    Affirmed.